**AT & T CORP. and AT & T Communications of the Southwest, Inc., Appellants**

v.

**Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellees.**

**No. 03–98–00207–CV.**

Court of Appeals of Texas, Austin.

Aug. 26, 1999.

Jasper G. Taylor, III, Fulbright & Jaworski, L.L.P., Houston, for Appellants.

John Cornyn, Atty. Gen., Jim B. Cloudt, Asst. Atty. Gen., Taxation Division, Austin, for Appellees.

Before Chief Justice ABOUSSIE, Justices JONES and PATTERSON.

J. WOODFIN JONES, Justice.

Appellants AT & T Corporation ("AT & T") and AT & T Communications of the Southwest, Inc. ("AT & T Southwest")[1] sued the State Comptroller, appellee,[2] after the Comptroller denied the AT & T Companies' request for a refund of certain taxes paid. Following a bench trial, the trial court rendered judgment for the Comptroller. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this case are largely undisputed. Appellants AT & T and its wholly owned subsidiary AT & T Southwest are two distinct taxpayers that are, or have been, in the business of providing long distance telephone services in Texas; AT & T provided services prior to January 1, 1984, and AT & T Southwest took over as provider following that date.

In 1993 the AT & T Companies filed a claim with the Comptroller seeking a refund of amounts one or the other of them paid from 1979 to 1988 for two categories of taxes: (1) the Public Utility Commission assessments ("PUC assessments") imposed on public utilities for the purpose of "defray[ing] the expenses incurred" in the administration of the Public Utility Regulatory Act;[3] and (2) the since-repealed

---

**1.** We refer to appellants collectively as the "AT & T Companies."

**2.** This appeal was originally filed in the names of the predecessors to the present Comptroller and Attorney General of the State of Texas. The current holders of those offices have been automatically substituted as appellees pursuant to Rule 7.2(a) of the Texas Rules of Appellate Procedure. Because the interests of appellees the Attorney General

and the Comptroller do not diverge in this case, we refer to them collectively as the "Comptroller."

**3.** Public Utility Regulatory Act, 64th Leg., R.S., ch. 721, §§ 1–92, 1975 Tex. Gen. Laws 2327 (Tex.Rev.Civ. Stat. Ann. art. 1446c, since repealed and codified at Tex. Util.Code Ann. §§ 11.001–63.063 (West 1998)). We will cite to the current version for convenience.

miscellaneous gross receipts tax imposed on operators of telephone lines by former section 182.062 of the Tax Code.[4] The refund request complained that the Comptroller had imposed the taxes and assessments on the AT & T Companies, but had not imposed them on other similarly situated long-distance providers. The Comptroller denied the refund claim. The AT & T Companies responded by filing the suit now the basis of this appeal, complaining that the Comptroller improperly denied the refund request because the taxes and assessments had been collected in violation of the equal protection provisions of the United States and Texas Constitutions.[5]

The parties stipulated as to the amounts in dispute and the time periods involved with respect to each taxpayer and each tax. The dispute may be summarized as follows:

• **AT & T Southwest** seeks a refund of **PUC assessments** paid for the periods from January 1, 1984 through June 30, 1988 in the total amount of $7,990,627.

• **AT & T Southwest** seeks a refund of **gross receipts taxes** paid for the periods from January 1, 1984 through September 30, 1985 in the total amount of $32,518,622.

• **AT & T** seeks a refund of **gross receipts taxes** paid for the periods from October 1, 1979 through December 31, 1983 in the total amount of $1,882,711.

The Comptroller asserted the defense of limitations and also raised certain agreements between the parties as barring suits related to the taxes and assessments. In response, the AT & T Companies argued that the Comptroller was precluded from asserting its defenses by the discovery rule and by the equitable doctrines of fraudulent concealment and estoppel.

After a trial before the court, a take-nothing judgment was rendered against the AT & T Companies. The trial court filed findings of fact and conclusions of law favoring the Comptroller on its asserted defenses. In particular, the court concluded: (1) the general statute of limitations [6] bars any recovery by AT & T Southwest for refunds of PUC assessments; (2) the AT & T Companies' claims for refund of gross receipts taxes are barred both by agreements between the parties and by the limitations period provided for in section 111.201 of the Texas Tax Code; (3) the constitutional claims of the AT & T Companies are barred by the applicable statutes of limitations; and (4) neither fraudulent concealment nor equitable estoppel bar the Comptroller from asserting its defenses. On appeal, the AT & T Companies challenge the trial court's conclusions that its claims are barred by limitations or agreements between the parties, and they also attack the court's conclusions regarding estoppel and fraudulent concealment.

## DISCUSSION

### *Standard of Review*

■■■ A trial court's findings of fact are given the same weight as a jury's verdict. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 195 (Tex.App.—Austin 1992, no writ). Thus, findings of fact are reviewed for legal and factual sufficiency under the same standards used to review jury findings. *See id.* When reviewing a finding for factual sufficiency, we must consider and weigh all the evidence and must uphold the contested finding unless we find either that the evidence supporting the finding is so weak,

4. Act of June 10, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1490, 1714–16 (Tex. Tax Code Ann. § 182.062, since repealed). The gross receipts tax had been collected from local telephone companies since the early 1900s pursuant to predecessor statutes to section 182.062, but as of the late 1970s the Comptroller began collecting the gross receipts tax from long-distance providers as well.

5. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, §§ 3, 19.

6. *See* Tex. Civ. Prac. & Rem.Code § 16.051 (West 1997) and its predecessors.

or the finding is so against the overwhelming weight of the evidence, as to be manifestly unjust. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,* " 69 Tex. L.Rev. 515 (1991). In reviewing a finding of fact for legal sufficiency, we consider only the evidence supporting the finding and disregard all evidence to the contrary. *See Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990); *Garza,* 395 S.W.2d at 823. *See generally* Powers & Ratliff, *supra,* 69 Tex. L.Rev. 515. If there is any evidence supporting the finding, we must uphold it. *See id.* The party bearing the burden of proof at trial who challenges an adverse finding based on legal sufficiency must demonstrate on appeal that the evidence conclusively establishes all facts necessary to support the issue. *See, e.g., Knoll v. Neblett,* 966 S.W.2d 622, 629 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

■■■■ We review challenges to conclusions of law *de novo,* examining the legal conclusions drawn from the facts to determine their correctness. *See Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.,* 981 S.W.2d 483, 485 (Tex.App.—Austin 1998, no pet.). The trial court's conclusions will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See Westech Eng'g,* 835 S.W.2d at 196; *Simpson v. Simpson,* 727 S.W.2d 662, 664 (Tex.App.—Dallas 1987, no writ).

***PUC Assessments—AT & T Southwest***

On August 27, 1993, AT & T Southwest formally requested a refund from the Comptroller for PUC assessments collected between January 1, 1984 and June 30, 1988. The Comptroller denied the refund

request and subsequently overruled AT & T Southwest's motion for rehearing. Within 30 days following the denial of the rehearing, AT & T Southwest filed suit. The trial court concluded that the general statute of limitations found in section 16.051 of the Texas Civil Practice and Remedies Code barred recovery.[7]

*I. Limitations*

Section 16.051 provides that "[e]very action for which there is no express limitations period ... must be brought not later than four years after the date the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 1997). AT & T Southwest does not dispute that it did not file its refund claim with the Comptroller until five years after the latest contested assessment was collected, but argues that the residual limitations period established by section 16.051 applies only to suits in civil court, not refund claims filed with the Comptroller. *See Thomas v. Oldham,* 895 S.W.2d 352, 356 (Tex.1995); *Whitfield v. Burrell,* 54 Tex.Civ.App. 567, 118 S.W. 153, 156 (1909, writ ref'd). We agree with AT & T Southwest that the real issue before this Court is whether the *lawsuit* was filed before limitations ran.

■■■■ In order to determine whether AT & T Southwest timely filed its lawsuit, we must first set out the statutory scheme surrounding PUC assessments and limitations. PUC assessments are based on the yearly gross receipts of a utility and are due and payable on August 15th of each year. *See* Tex. Util.Code Ann. § · 16.002 (West 1998). "The report due on August 15 of each year is for the reporting period of July 1 of the prior year through June 30 of the current year." *See* 34 Tex. Admin. Code § 3.511 (1999).

---

7. AT & T Southwest contends it is unclear whether the trial court relied on the section 16.051 limitations provision, or instead relied on limitations provisions found in the Tax Code. We disagree. Although the trial court concluded that the claim for *gross receipts* taxes is barred by Tax Code limitations, the court clearly concluded that recovery based on the *PUC assessments* is barred by the general statute of limitations found in section 16.051 of the Civil Practice and Remedies Code.

Thus, for the reporting periods at issue in the present appeal, the due dates were as follows:

- July 1, 1983 to June 30, 1984. .... Due August 15, 1984
- July 1, 1984 to June 30, 1985. .... Due August 15, 1985
- July 1, 1985 to June 30, 1986. .... Due August 15, 1986
- July 1, 1986 to June 30, 1987. .... Due August 15, 1987
- July 1, 1987 to June 30, 1988. .... Due August 15, 1988

■■■■ At the time each of these assessments was collected, there was no express limitations period for filing suit to obtain a refund; therefore, the residual statute applied. *See* Civ. Prac. & Rem.Code § 16.051. A cause of action for a tax refund generally accrues when the tax becomes due. Accordingly, a suit for refund would be barred if not filed on August 15, 1988 for reporting period July 1, 1983 to June 30, 1984; on August 15, 1989 for reporting period July 1, 1984 to June 30, 1985; on August 15, 1990 for reporting period July 1, 1985 to June 30, 1986; on August 1991 for reporting period July 1, 1986 to June 30, 1987; and on August 15, 1992 for reporting period July 1, 1987 to June 30, 1988.

The record shows that AT & T Southwest did not file suit for refund until February 19, 1997, more than four years after even the latest assessment due date. Nevertheless, AT & T Southwest contends that the limitations statute was satisfied because it filed suit within 30 days after the Comptroller's denial of its motion for rehearing. In order to address this contention, we must return to our review of the statutory scheme surrounding PUC assessments.

In 1991 new legislation was adopted whereby PUC assessments for the first time became subject to the provisions found in Chapters 111 (addressing tax collection procedures) and 112 (addressing taxpayers' suits) of the Tax Code. *See* Tax Code §§ 111.0021 ("This chapter also applies to a tax or fee that the comptroller is required to collect under a law not included in this title"), 112.002 ("In this chapter, the terms "tax" and "fee" include an assessment. . . ."). Of particular relevance to the instant appeal, section 112.151 permits a taxpayer to sue the Comptroller for a tax refund, but only after the taxpayer has first filed with the Comptroller a refund request and a motion for rehearing after a denial of the refund request. *See id.* § 112.151. The request must be filed within four years of the date the tax becomes due. *See id.* § 111.104(b)(3) (requests for refund must be filed before expiration of "applicable limitation period as provided by this code"); § 111.107 (taxpayer must file refund within time period allotted to Comptroller to assess tax); § 111.201 (Comptroller has four years from date tax becomes due to assess tax). If the request is timely made by the taxpayer and denied by the Comptroller, the taxpayer must then bring suit before the expiration of 30 days after the Comptroller denies the motion for rehearing. *See id.* § 112.151.

Accordingly, after the adoption of the 1991 legislation, a party requesting a refund of a PUC assessment was, for the first time, required to file an administrative tax refund claim with the Comptroller before filing suit. Furthermore, the newly created 1991 legislation effectively superseded the residual statute of limitations with a new limitations scheme. Under the previously applicable residual period, limitations was tied to the filing of *suit* within four years of the date the assessment became due. Under the new Tax Code scheme, limitations became tied to the filing of an *administrative claim for refund* within four years of the date the assessment became due and the subsequent filing of suit following the denial of a motion for rehearing.

Relying on the 1991 legislation applying the Tax Code to PUC assessments, AT & T Southwest urges this Court to find that because it filed a refund request with the

Comptroller, followed by a lawsuit within 30 days of the denial of its motion for rehearing, its suit was timely. We decline to do so.

It bears ·repeating that before 1991, no administrative refund request was necessary prior to filing suit for a refund of PUC assessments, and the only applicable limitations period was the residual four-year period. Accordingly, as to the assessments due by AT & T Southwest on August 15, 1984, 1985, 1986, 1987, the limitations period had run as of August 15, 1988, 1989, 1990, and 1991, respectively. The new legislation superseding this limitations period was not effective until September 1, 1991. Therefore, as of the effective date of the new law, the residual limitations period *had already run.* Although the 1991 legislation did significantly affect the limitations period for filing suit for a refund of PUC assessments, we do not believe the legislature intended to revive claims·on which limitations had already run.

We conclude that recovery for PUC assessments due on August 15, 1984, 1985, 1986, 1987 is barred by the residual statute of limitations contained in section 16.051 of the Civil Practice and Remedies Code, and that AT & T Southwest's compliance with section 112.151 of the Tax Code could have no effect on the timeliness of suit.

■■ As to the reporting period from July 1, 1987 to June 30, 1988, however, AT & T Southwest would, under the residual four-year limitations period, have had until August 15, 1992 to file a suit for refund in district court; therefore, the cause of action was not barred by limitations when the new legislation became effective on September 1, 1991. Applying the newly applicable provisions, AT & T Southwest was required to file. a refund request for the reporting period from July 1, 1987 to June 30, 1988 prior to filing suit, and had to file the request before the expiration of four years from the assessment due date.

We note that the date by which AT & T Southwest would have been required to file suit under the residual statute of limitations and the date it was required to file a refund request under the newly adopted Tax Code procedures are the same date: August 15, 1992. In effect, the 1991 legislation did nothing to change the date by which AT & T Southwest had to *take action;* it simply required an administrative refund request be filed rather than a suit in district court.

■■■ It has long been the rule that the legislature may provide a shorter period of limitations for existing causes of action, or may impose a statute of limitations when none existed before, so long as the claimant is afforded a reasonable time to preserve his rights. *See City of Tyler v. Likes,* 962 S.W.2d 489, 502 (Tex.1997); *Wright v. Hardie,* 88 Tex. 653, 32 S.W. 885, 886 (1895). Here, the legislature neither shortened the existing period of limitations nor added a new limitations period, but simply changed the action to be taken within the applicable limitations period. Regardless, we believe that 11 months was a reasonable amount of time for AT & T Southwest to preserve its rights by filing an administrative request for refund.

AT & T Southwest did not file its request for refund until August 27, 1993, nearly two full years following the adoption of the 1991 legislation. We are not faced with a situation where, upon the adoption of new administrative requirements, AT & T Southwest diligently attempted to comply before the running of the limitations period, but, because of time constraints, was unable to do so. AT & T Southwest cannot rely on its late demand and subsequent compliance with section 112.151 of the Tax Code to defeat the Comptroller's limitations defense.

*2. Extension Agreement*

■■ AT & T Southwest next argues that even assuming it would otherwise be barred by limitations, the Comptroller agreed to an extension for filing a refund

claim as to the last reporting period. The record shows that in May 1993, the Comptroller and AT & T Southwest entered into an agreement purporting to extend until August 31, 1993 the expiration date for the Comptroller to impose the PUC assessment for the reporting period July 1, 1987 to June 30, 1988. This extension agreement would automatically give AT & T Southwest the same deadline for seeking a refund.[8] *See* Tax Code § 111.107.

Pursuant to section 111.203, the Comptroller and a taxpayer may agree in writing to extend limitations for filing a refund claim, but the agreement must be in place *before the limitations period expires. See id.* § 111.203(a). AT & T Southwest and the Comptroller were free to enter into an extension agreement, but they had to do so before August 15, 1992, the original deadline for the Comptroller to impose that PUC assessment. The extension agreement was not entered into until May 1993, almost a full year after the deadline. We conclude that the agreement was invalid as a matter of law and was ineffective to extend the limitations period.

### 3. Equitable Doctrines

AT & T Southwest asserts that, even if limitations would otherwise preclude recovery for PUC assessments, the limitations defense is barred by the discovery rule and by the equitable doctrines of estoppel and fraudulent concealment. While we address each of these doctrines separately, we will first set forth the common set of facts on which AT & T Southwest relies to support its argument as to all three doctrines.

In 1975, when the PUC assessment was first imposed, the Attorney General of Texas issued an opinion concluding that all public utilities were subject to the assessment, including all telephone carriers. *See* Op. Tex. Att'y Gen. No. H–811 (1976).

Nonetheless, the Public Utilities Commission chose to tax only those carriers classified as "dominant carriers." Apparently, AT & T Southwest was the only long-distance carrier considered to be "dominant" at that time, so only AT & T Southwest was required to pay the assessment. In 1985, the Comptroller asked the Commission to confirm which telephone companies were subject to the assessment. The Commission stated that only "dominant carriers" were included. In 1990, the Comptroller requested an opinion from the Attorney General as to whether the previous opinion intended to hold that *all* utilities were subject to the assessment. The Attorney General upheld the prior opinion. *See* Op. Tex. Att'y Gen. No. JM–1280 (1990).

AT & T Southwest alleges that in 1990, when the Comptroller requested clarification from the Attorney General, Comptroller officials were well aware of the past and continuing "discrimination" against AT & T Southwest, recognized the potential exposure for its unequal tax treatment, and set out to hide this information. In particular, AT & T Southwest directs this Court to internal memoranda in which an auditor from the Comptroller's office suggested that all references to AT & T Southwest be deleted from the request for an Attorney General opinion so as not to be "waiving a red flag at AT & T" in case "AT & T is not aware" that it was the only carrier paying the assessment. These memoranda also cautioned of potential financial exposure if AT & T Southwest learned of the unequal treatment.

#### a. Discovery Rule

 AT & T Southwest contends that, because the Comptroller concealed its discriminatory collection of PUC assessments, the limitations defense was tolled pursuant to the "discovery rule."[9] The

---

**8.** AT & T Southwest's refund request was filed August 27, 1993.

**9.** AT & T Southwest did not assert the applicability of the discovery rule before the trial court; as a result, the trial court entered no findings or conclusions as to its applicability. Because AT & T Southwest did plead the related doctrines of equitable estoppel and fraudulent concealment based on the same set

discovery rule is a limited doctrine that acts to "defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998). The discovery rule allows an exception to limitations only if the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable. *See id.; S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex.1996); *Computer Assocs. Int'l, Inc. v. Altai,* 918 S.W.2d 453, 456 (Tex.1996). It is not enough that the particular injury complained of is not discovered; rather, the question is whether the injury is of the type that is generally discoverable by the exercise of due diligence. *See HECI,* 982 S.W.2d at 886. Thus, the first question for this Court is whether the Comptroller's selective collection of the PUC assessment is the type of injury that was inherently undiscoverable.

Notwithstanding the evidence AT & T Southwest submits as proof that the Comptroller was actively concealing its selective collection of the PUC assessment, we conclude that this type of injury was not inherently undiscoverable. Our conclusion is based, in significant part, on the recent decision by the supreme court in *HECI.* There, royalty owners sued their lessee for failure to notify them that the lessee had obtained a judgment against the operator of an adjoining lease for overproduction. The royalty owners did not bring suit until after the applicable limitations period had expired, but claimed that because they had not learned of the judgment until just before they filed suit, the discovery rule should apply to forestall limitations. The court disagreed, noting that the information was available from several sources. In particular, the court found that the materials were "publicly available" from the Railroad Commission, and that "a cause of action for failure to

provide that same information is not inherently undiscoverable." *See id.* at 887.

Similarly, in the instant appeal, the information showing that the Comptroller was collecting the PUC assessment only from AT & T Southwest was public information. AT & T Southwest could have made an open records request or a more informal request with the Comptroller inquiring as to what companies were paying the assessments and the amounts being paid. Applying the reasoning of *HECI,* the cause of action for discrimination was not inherently undiscoverable because it was based on the Comptroller's failure to provide information that was publicly available. Because a ready source of information was available to AT & T Southwest, we hold that the discovery rule could not act to bar the Comptroller's limitations defense.

 b. Equitable Estoppel

■ AT & T Southwest next argues that the Comptroller should be estopped from asserting its limitations defense because its officials misrepresented and concealed the truth in order to hide the fact that AT & T Southwest could potentially maintain a cause of action for discrimination.

■ As the party asserting equitable estoppel to defeat limitations, AT & T Southwest had the burden to prove: (1) a false misrepresentation or concealment of a material fact, (2) made with knowledge of the fact, (3) to a party without that knowledge or means to acquire it, (4) with the intention that it be acted on, and (5) the party to whom the misrepresentation is made does rely on it to his detriment. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991). The trial court found that AT & T Southwest failed to affirmatively prove that the Comptroller should be precluded from asserting its limitations defense on this basis.

of facts, however, we will consider the applicability of the discovery rule. *See Weaver v. Witt,* 552 S.W.2d 565, 567 (Tex.Civ.App.—

Houston [14th Dist.] ), *rev'd on other grounds,* 561 S.W.2d 792 (Tex.1977).

We agree that the evidence presented, particularly the memoranda from the Comptroller's auditor, may constitute some evidence that would support a contention that the Comptroller should be equitably estopped from asserting limitations. We do not believe, however, that AT & T Southwest's evidence constitutes *conclusive* proof as to each of the required elements of equitable estoppel. For instance, evidence that the Comptroller did not affirmatively inform AT & T Southwest of the concerns of an auditor does not conclusively establish that the Comptroller actively engaged in false misrepresentations or concealment. Moreover, the evidence produced by AT & T Southwest did not conclusively prove that it did not have the means to learn that it was the only long-distance provider paying PUC assessments. Simply because the Comptroller took no active steps to inform AT & T Southwest of the situation does not mean that AT & T Southwest had no means to discover this information on its own. AT & T Southwest does not dispute that it knew it was the only carrier characterized as "dominant," and the fact that the assessment was being collected only from "dominant" carriers was easily determinable from either the Comptroller or the Public Utility Commission.

Because equitable estoppel was an issue on which AT & T Southwest had the burden of proof at trial, in challenging the trial court's adverse finding for legal sufficiency, AT & T Southwest is required to demonstrate on appeal that the evidence conclusively established all facts necessary to support the issue. *See Knoll,* 966 S.W.2d at 629. Our review of the record reveals that AT & T Southwest failed to conclusively prove all the elements of equitable estoppel; accordingly, this doctrine does not defeat the Comptroller's limitation defense. *See Schroeder,* 813 S.W.2d at 489; *City of Houston v. McDonald,* 946 S.W.2d 419, 421 (Tex.App.—Houston [14th Dist.] 1997, writ denied) (both in summary-judgment context).

c. Fraudulent Concealment

The doctrine of fraudulent concealment "is an equitable doctrine that provides an affirmative defense to the plea in bar of limitations." *Santanna Natural Gas Corp. v. Hamon Operating Co.,* 954 S.W.2d 885, 890 (Tex.App.—Austin 1997, pet. denied). Fraudulent concealment requires either the active suppression of truth or the failure to disclose when there is a duty to speak. *See id.* The elements of fraudulent concealment are: (1) actual knowledge by a defendant that a wrong has occurred, and (2) a fixed purpose to conceal the facts necessary for the plaintiff to know it has a cause of action. *See id.* Passive silence is enough to sustain a fraudulent concealment defense only if there is a duty of disclosure. *See Patrick v. Howard,* 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ).

As with its claim of equitable estoppel, AT & T Southwest failed to conclusively prove the elements of fraudulent concealment. The evidence presented by AT & T Southwest shows no affirmative misrepresentation by the Comptroller. For instance, the Comptroller did not misrepresent to AT & T Southwest that its competitors were paying the PUC assessment when they actually were not.

AT & T Southwest argues that the Comptroller engaged in an affirmative misrepresentation when it was not completely truthful in its request for an Attorney General opinion in that it failed to disclose all the necessary facts. Our review of the request, however, shows that all facts necessary for the Attorney General to answer the legal question presented were disclosed. Moreover, even assuming that leaving out references to "AT & T Southwest" could somehow rise to the level of a misrepresentation, that representation was made to the Attorney General, not to AT & T Southwest.

At most, the Comptroller engaged in passive silence when it did not seek out AT & T Southwest and tell them

the Public Utility Commission was requiring that the assessments be collected only from "dominant" carriers. Generally, a duty of disclosure arises only when the parties have a special relationship of trust, such as attorney-client, doctor-patient, or other fiduciary relationship. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997); *Santanna,* 954 S.W.2d at 891; *Patrick,* 904 S.W.2d at 945. We do not believe that the Comptroller had the kind of special relationship with AT & T Southwest that would give rise to a duty to give advice to AT & T Southwest as a taxpayer or to reveal the tax treatment of other companies.

The trial court found that the Comptroller did not fraudulently conceal any facts and that AT & T Southwest did not meet its burden of proving fraudulent concealment. In challenging the trial court's adverse finding for legal sufficiency, AT & T Southwest is required to demonstrate on appeal that the evidence conclusively established all facts necessary to support fraudulent concealment. *See Knoll,* 966 S.W.2d at 629. Our review of the record leads us to conclude that AT & T Southwest failed to meet this burden; accordingly, the doctrine of fraudulent concealment does not defeat the Comptroller's limitation defense.

*4. Summary*

In summary, we hold that AT & T Southwest's suit for a refund of PUC assessments for the reporting periods January 1, 1984 to June 30, 1987 is barred by the residual statute of limitations. *See* Civ. Prac. & Rem.Code § 16.051. AT & T Southwest's suit for PUC assessment refunds for the period of July 1, 1987 to June 30, 1988 is barred for failure to timely file a refund request with the Comptroller. *See* Tax Code §§ 111.104, .107, .201. Finally, the discovery rule and the equitable doctrines of estoppel and fraudulent con-

cealment do not bar the Comptroller from asserting its limitations defense.

**Gross Receipts Tax—AT & T**

 AT & T was audited by the Comptroller regarding its gross receipts tax liability for the period from October 1, 1979 to December 31, 1983. AT & T disagreed with the audit results and sought a redetermination, which was docketed as Comptroller Hearing Number 18,600. The parties eventually negotiated a settlement, and a Joint Motion to Dismiss Hearing Number 18,600 was filed in 1988.

In 1993 AT & T filed its claim with the Comptroller requesting a refund of gross receipts taxes, including a claim for the period that had been the subject of the 1988 dismissal agreement. After this request was denied, AT & T brought suit. The trial court found that the 1988 agreement barred AT & T's subsequent refund request for recovery of gross receipts tax paid from October 1, 1979 to December 31, 1983.[10]

The Joint Motion to Dismiss provided, in pertinent part:

Finally, ... it is expressly understood and agreed that the filing of this Joint Motion to Dismiss is for the purposes of finally resolving all the issues involved in these hearings, that it shall have no precedential value or effect, and that it is without prejudice to the position of either the [Comptroller] or [AT & T]. Based upon the agreements as set out herein, [AT & T] concedes that the amount of tax, penalty and interest is owed. [AT & T] concedes all other contentions, assertions, or issues it has raised or may have raised in connection with this audit. Furthermore, [AT & T] agrees not to seek a refund through further administrative or judicial proceedings for any taxes, penalty or interest related to this audit period.

---

**10.** The AT & T Companies also complain that the trial court erred in finding any recovery by *AT & T Southwest* was barred by the 1988 agreement because AT & T Southwest was not a party to that agreement. The trial court made no such finding as to AT & T Southwest, and the Comptroller advances no such theory.

AT & T contends the Motion to Dismiss is ambiguous because on the one hand it professes to have no precedential value and to be without prejudice to either party's position, while on the other hand it bars AT & T from seeking a refund in the future. Based on this alleged ambiguity, AT & T argues that the dismissal must be construed against the party who drafted the document—allegedly the Comptroller. If properly construed in its favor, AT & T argues, the 1988 dismissal would have no effect on its ability to later seek a refund for those same amounts.

■■■■■ As a general rule, writings are construed strictly against the author and in a manner so as to reach a reasonable result that is consistent with the intent of the parties. *See, e.g., Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex. 1990); *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 115 (Tex. 1978). However, this rule only applies *after the document is found to be ambiguous. See GTE Mobilnet of South Texas Ltd. Partnership v. Telecell Cellular, Inc.,* 955 S.W.2d 286, 290 (Tex.App.—Houston [1st Dist.] 1997, pet. denied); *Kincaid v. Gulf Oil Corp.,* 675 S.W.2d 250, 256 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). The Comptroller argues that the motion to dismiss is not ambiguous because the language can be given a definite legal meaning: that AT & T agreed to release all claims it raised in the administrative hearing, or could have raised, and further agreed not to file a suit for refund in the future with regard to the period covered by the dismissal. We agree.[11]

■■■■■ Not every difference in the interpretation of a contract creates an ambiguity. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994). The mere disagreement over the meaning of a particular provision in a contract does not make it ambiguous. *See, e.g., GTE Mobilnet,*

955 S.W.2d at 289; *S & A Marinas, Inc. v. Leonard Marine Corp.,* 875 S.W.2d 766, 769 (Tex.App.—Austin 1994, writ denied); *Preston Ridge Fin. Servs. Corp. v. Tyler,* 796 S.W.2d 772, 777 (Tex.App.—Dallas 1990, writ denied). In order for an ambiguity to exist when the parties advance conflicting interpretations, both interpretations must be reasonable. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996).

■■■■■ The primary goal in interpreting a contract is to give effect to the written expression of the parties' intent. *See Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 741 (Tex.1998). To determine the parties' intent, courts must consider the entire writing in an effort to harmonize all the provisions of the instrument. *See Preston Ridge Fin. Servs.,* 796 S.W.2d at 775 (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). Parol evidence is not admissible to render a contract ambiguous; however, "the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Balandran,* 972 S.W.2d at 741; *see also National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995).

■■■■■ The 1988 Joint Motion to Dismiss was entered into as a result of an agreement between the Comptroller and AT & T regarding AT & T's liability for gross receipts taxes collected from October 1, 1979 to December 31, 1983. It was within this settlement context that the parties jointly sought to dismiss AT & T's pending claims. The joint motion unambiguously and with specificity states that AT & T concedes all issues it could have raised with regard to the tax audit, and that AT & T agrees not to seek a refund in the future for the covered period. The clear language of the dismissal motion, coupled with the surrounding circumstances, shows

---

**11.** The Comptroller alternatively argues that even if the 1988 dismissal is ambiguous, there is no evidence to suggest it drafted the Joint Motion to Dismiss alone. Because we find

the dismissal was not ambiguous, we need not address whether the Comptroller was the drafter of the instrument.

that the parties' intent was to finally and fully resolve the amount of tax owed for the relevant period. The general recitation that the dismissal is "without prejudice" cannot be isolated from its context or considered apart from the remaining provisions on the same subject. *See Forbau,* 876 S.W.2d at 134 (citing *Guardian Trust Co. v. Bauereisen,* 132 Tex. 396, 121 S.W.2d 579, 583 (1938)). We conclude that the 1988 Joint Motion to Dismiss is subject to only one reasonable interpretation consistent with the surrounding circumstances and the parties' intent, and we therefore refuse to construe it against the Comptroller as urged by AT & T.

▇▇ Even if we were to adopt AT & T's position that the dismissal is ambiguous, we still would not necessarily conclude that it must be construed as AT & T asserts. In construing agreements found to be ambiguous, specific terms will control over general terms on the same topic. *See Hinojosa v. Housing Auth.,* 940 S.W.2d 763, 766 (Tex.App.—San Antonio 1997, no writ); *Hussong v. Schwan's Sales Enters., Inc.,* 896 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1995, no writ). Favoring the more specific terms of the dismissal (the agreement finally resolves all issues surrounding the covered tax; concession by AT & T that it will not seek a future refund) over the more general terms (the agreement will have no precedential value or effect; is without prejudice) favors the Comptroller's position. Accordingly, even if the agreement were ambiguous as urged by AT & T, this Court would be faced with competing rules of construction, one favoring AT & T and one favoring the Comptroller. There is authority to suggest that a contract may be construed against the drafter only as a last resort when all other rules of construction leave the court with doubt as to its meaning. *See Forest Oil Corp. v. Strata Energy, Inc.,* 929 F.2d 1039, 1041 (5th Cir.1991) (interpreting

Texas law). To the extent the rule that specific language controls over general language "trumps" the requirement that a document be construed against its drafter, the Comptroller's position would be favored.

Because we find that the 1988 dismissal unambiguously states the parties' intent that AT & T may not seek a future refund of gross receipts taxes collected for the period October 1, 1979 to December 31, 1983, we hold that the agreement bars any recovery by AT & T for those amounts. Having so held, we need not address the trial court's alternative conclusion that AT & T is precluded from recovering by the applicable statute of limitations; we also need not address whether equitable doctrines preclude the Comptroller from asserting the limitations defense.

### Gross Receipts Tax—AT & T Southwest

▇ In 1985 AT & T Southwest filed suit seeking a refund of amounts paid under protest for gross receipt taxes, including those paid for the period of January 1, 1984 to June 30, 1984, and further to recover "all additional monies, if any, based upon similar unlawful assessments which [AT & T Southwest] may be required to pay under protest during the pendency and until final determination of this lawsuit...." [12]

The parties eventually entered into a settlement of that suit in May 1985. The written manifestation of the parties' settlement agreement is a letter drafted by a representative of AT & T Southwest in which AT & T Southwest agreed to dismiss its lawsuit, thereby

> relinquishing its claim for refund of said taxes paid under protest relating to 1984. This dismissal will also include the protested payment relating to the first quarter of 1985, however it is understood that the disputed portion of that payment will be accounted for in

---

**12.** The refund sought in this lawsuit was not based on allegations of unconstitutional dis-

crimination.

accordance with the terms set forth below.

The letter then states that the agreement is conditioned on House Bill 1949 (newly passed by the 69th Texas Legislature) becoming law, and on the Comptroller's agreeing to a specific method for calculating AT & T Southwest's liability for taxes "relating to 1985." Both conditions were satisfied, and the lawsuit was dismissed.

In 1997 AT & T Southwest filed the present suit seeking a refund of gross receipts taxes paid in 1984 and the first three quarters of 1985 (the portion of 1985 before House Bill 1949 became effective). The trial court concluded that AT & T Southwest's entire claim was barred by the agreement settling the 1985 lawsuit.[13]

AT & T Southwest argues that the quoted language establishes that the dismissal related only to 1984 and the *first quarter* of 1985, and did not include the second and third quarters of 1985. Responding that the balance of the agreement is not so limited, the Comptroller directs this Court to the following additional language found in the letter agreement: "The settlement relates only to telephone gross receipts tax liability of [AT & T Southwest] for 1984 *and 1985.*" (Emphasis added.)

As stated earlier, our primary goal in construing a contract is to give effect to the written expression of the parties' intent. *See Balandran,* 972 S.W.2d at 741. Although parol evidence is not admissible to render a contract ambiguous, "the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Id.*

In determining if the letter agreement is ambiguous, we note that it was created as a settlement of a lawsuit for gross receipts taxes paid and any additional amounts AT & T Southwest might be required to pay during the pendency of the suit. Further, the settlement letter itself contains broad language referring to the settlement of AT & T Southwest's claims for all of 1985. After reading all parts of the contract together in an attempt to give effect to the parties' intent, and after considering the circumstances surrounding its creation, we believe the agreement could reasonably be read as providing that AT & T Southwest relinquished its claims as to 1984 and (1) *all of 1985,* or (2) the portion of 1985 *before the effective date of House Bill 1949,* or (3) only the *first quarter of 1985.* Because the agreement is subject to more than one reasonable interpretation, we find it to be ambiguous.

 Once a document has been found to be ambiguous, the interpretation of the contract becomes a fact issue to be decided by the trier of fact. *See Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). In the present appeal, the trial court entered findings indicating that it resolved this factual determination in favor of the Comptroller. We review these findings for factual and legal sufficiency. *See Westech Eng'g,* 835 S.W.2d at 195.

While AT & T Southwest has presented some evidence to support its interpretation of the parties' agreement, our review of the record shows that there is also evidence to support the trial court's finding to the contrary. Because there is some evidence to support the trial court's finding, we must uphold the finding under a legal sufficiency review. *See Best,* 786 S.W.2d at 671; *Garza,* 395 S.W.2d at 823. Likewise, after considering and weighing all the evidence in the record equally, we find that the evidence supporting the contested finding is not so weak, nor so against the overwhelming weight of the evidence, as to be manifestly unjust; therefore, we must uphold the finding under a factual sufficiency review. *See Garza,* 395 S.W.2d at

---

**13.** The AT & T Companies complain that because AT & T was not a party to the 1985 dismissal, the trial court erred in finding this agreement bars AT & T's claims for a refund of gross receipts taxes. The trial court made no such conclusion as to AT & T, and the Comptroller does not advance any such theory.

823. *See generally* Powers & Ratliff, *supra,* 69 Tex. L.Rev. 515.

Because the agreement between the parties is ambiguous, and because there is both factually and legally sufficient evidence to uphold the trial court's finding, we hold that AT & T Southwest's suit to recover a refund of gross receipts for all of 1984 and 1985 is barred by the 1985 settlement agreement. Having so held, we need not address the trial court's alternative conclusion that recovery is barred by limitations, nor AT & T Southwest's argument that the limitations defense is precluded by equitable doctrines.

## CONCLUSION

Having determined that all of the claims for refund by the AT & T Companies are barred either by the applicable statute of limitations or by agreements of the parties, and that the discovery rule and the equitable doctrines of estoppel and fraudulent concealment do not preclude the Comptroller from asserting its limitations defense, we affirm the trial court's judgment.