# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00231-CV[1]

---

### Sky Station Holdings I, LP, Appellant

### v.

### Fidelity National Title Insurance Company, Boris Serebro, and Serebro Law PLLC, Appellees

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-005849, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Sky Station Holdings I, LP, appeals from the trial court's orders granting summary judgment in favor of appellees Boris Serebro and his law firm, Serebro Law PLLC (collectively Serebro), and Fidelity National Title Insurance Company. Those interlocutory orders were made final when they were severed into a separate cause. We will affirm the trial court's granting of summary judgment.

---

[1] The notice of appeal was originally filed in March 2016. The Supreme Court of Texas ordered the case transferred to the Eighth Court of Appeals pursuant to its docket equalization authority, *see* Tex. Gov't Code § 73.001; Misc. Docket No. 16-9040 (Tex. Mar. 22, 2016), and this Court transferred the case in April 2016. In April 2018, the Supreme Court of Texas ordered that this and other cases be transferred back to this Court from the Eighth Court, and we consider the appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018).

## PROCEDURAL BACKGROUND AND SUMMARY OF THE EVIDENCE[2]

In 2006, Interim-HZ Funding, LLC, Sky Station's predecessor in interest,[3] loaned $11 million to a company called Waterfall Gallery of Austin, LP. Waterfall used the money to buy approximately 200 acres from J&T Development Group, LP. Fidelity acted as closing agent, escrow agent, and title insurer; Vitaly Zaretsky was listed on the promissory note as Waterfall's "authorized representative" and elsewhere as its manager; Serebro was Waterfall's attorney; and Jeff Turner signed documents as J&T's manager. Interim's attorney sent Fidelity escrow instructions, which among other things provided that Waterfall and Fidelity were required to sign a Closing Statement approved by Interim; that Fidelity "must disburse the Loan Proceeds . . . as specified in the Closing Statement"; and that "[f]urther instructions regarding disbursement will be forthcoming from" Interim or its attorney. The loan's "Final Closing Statement" states that the property was being bought for $17,600,000 and that the "BALANCE DUE TO SELLER" after certain payments were deducted was $1,578,765.57. The seller, J&T, sent a letter instructing Fidelity to "wire the entire balance of the purchase price due to Seller" to Serebro's escrow account and providing wiring instructions to that account. A Disbursements Statement prepared by Fidelity states that $1,578,765.57 was disbursed to Serebro.

In December 2006, Alexandra and Alexander Krot, III filed suit against Zaretsky, Gennady Borokovich, Waterfall, Jeff Turner, and a number of other entities. The Krots alleged that Zaretsky and another individual had approached them about investing in land in Austin,

---

[2] We take this summary from the clerk's record, particularly Sky Station's live petition, the motions for summary judgment and responses, and evidence attached to those filings.

[3] The loan was assigned to Sky Station in May 2008. Both Sky Station and Interim were involved in the events preceding the filing of this lawsuit, but Sky Station is the party that brought suit. We will attempt to accurately state which party took which action.

asserting that they were partners with Borokovich. The Krots further contended that in 2006, acting on Zaretsky's instructions, they provided funds to buy the same property that Waterfall later bought in October 2006. The Krots' petition stated that J&T was "a company organized by Zaretsky's attorney" and that it "fraudulently conveyed the above-described real property" to Waterfall, "a newly formed limited partnership created by Zaretsky and Borokovich." The petition also included allegations of forged contracts and fraud. The Krots filed a notice of lis pendens against the property on December 15, 2006.

In April 2007, Waterfall was notified that it was in default on the loan. Foreclosure proceedings were eventually started, and in that process the Krots' lis pendens was discovered by Sky Station. Waterfall filed for bankruptcy in June 2008, the day before the foreclosure sale was to take place. Sky Station, as Interim's assignee, filed a notice of appearance and asked to be served with all papers filed in the bankruptcy. Gennady Borokovich, who was Zaretsky's partner in Waterfall, filed an emergency motion to dismiss the bankruptcy proceeding, providing a copy of the motion to Sky Station and Waterfall's other creditors. In the motion, Borokovich asserted that Zaretsky had "engaged in a pattern of fraud and perjury." He stated that Waterfall was formed with the purpose of buying 200 acres from J&T for $17,600,000, noting that the property was carved out of the larger 367-acre tract J&T had bought three months earlier for $11,700,000. Borokovich alleged that J&T was related to Waterfall, that its partners included Zaretsky and Borokovich, and that in November 2006, "Zaretsky pulled off a trifecta of fraud, (i) representing to the lender that there was a sale for $17,600,000; (ii) trying to represent to the partners and the federal government that there was no sale and thus no taxable event; and (iii) representing to potential investors that the 200 acres was worth $27,500,000." Borokovich asserted that the transfer of the 200 acres was not actually a sale but instead:

3

was nothing more than the second of a two-step preplanned sequence of events: (i) the distribution, without any consideration, of the 200 acres from J&T to its two largest beneficial equity owners, Zaretsky and Borokovich; followed immediately by (ii) the contribution by Zaretsky and Borokovich of that same property to a new entity, [Waterfall], which they would co-own and co-manage.

The Krots also involved themselves in the bankruptcy proceeding, asserting interests in the property and referring to the allegations they had made in their lawsuit. During the bankruptcy proceeding, Sky Station had the property appraised by John Coleman, who reported that the property was worth $8,100,000. He further stated that J&T had bought about 367 acres, including the property in question, about three months before it sold the 200-acre tract to Waterfall; that J&T bought the larger tract for $11,576,975; and that J&T's sale of the 200 acres to Waterfall "was not believed to have been an arms-length sale as Mr. Vitaly Zaretsky is noted as the Manager of both entities." In mid-2008, Sky Station obtained an order from the bankruptcy court lifting the stay, and it foreclosed on the property in November 2008.

About four years later, in April 2012, Interim filed a Pre-Suit Petition to Take Deposition to Investigate Potential Lawsuit under rule 202, *see* Tex. R. Civ. P. 202, seeking to depose a Fidelity corporate representative. At a hearing on the motion, Fidelity's attorney explained that although he did not believe rule 202 permitted the production or subpoenaing of documents, if Interim "were to give us the closing file numbers, which as a lender they should have access to . . ., we would give them [the closing file] under a protective order." The trial court signed an order in July 2012 requiring the production of the file, and Fidelity provided the file thirty days later.

In December 2012, Sky Station filed its first original petition against Fidelity and Jeff Turner, who is not a party to this appeal. It added Serebro as a defendant in August 2013.

4

Against Fidelity, Sky Station asserted claims for breach of fiduciary duty, common law fraud, constructive fraud, fraudulent inducement, negligence, negligence per se, and breach of contract; it sued Serebro for knowing participation in breach of fiduciary duty; and it sued both Fidelity and Serebro for conspiracy to commit breach of fiduciary duty, fraud in connection with a real estate transaction, conspiracy to commit fraud, and beneficiary of fraud.

Serebro and Fidelity filed motions for summary judgment asserting that Sky Station's claims were subject to statutes of limitations of, at most, four years. *See* Tex. Civ. Prac. & Rem. Code §§ 16.003 (two-year limitations period for claims of injury to property or conversion), .004 (four-year limitations period for fraud and breach of fiduciary duty), .051 (residual four-year limitations period for claims "for which there is no express limitations period"); *Hendricks v. Thornton*, 973 S.W.2d 348, 364 n.19 (Tex. App.—Beaumont 1998, pet. denied) (two-year limitations period for negligent misrepresentation, negligence, and gross negligence); *see also Agar Corp. v. Electro Circuits Int'l, LLC*, __S.W.3d__, No. 17-0630, 2019 WL 1495211, at *5-6 (Tex. Apr. 5, 2019) (civil-conspiracy limitations is that of underlying tort). Appellees argued that no later than July 2008—by which point Sky Station had, among other things, learned of the Krots' lis pendens against the property, received Coleman's report, and received Borokovich's emergency motion asserting fraud by Zaretsky in the sale of the property—Sky Station was on notice that it should conduct an inquiry that would have led to the discovery of its asserted claims against appellees. The parties objected to certain evidence presented by the opposing side. The trial court sustained several objections lodged against Sky Station's summary judgment evidence and granted summary judgment against Sky Station.

5

**DISCUSSION**

In its first three issues, Sky Station argues that the trial court erred in granting summary judgment in favor of appellees because appellees did not establish: that the discovery rule was inapplicable to Sky Station's claims, that the fraudulent concealment doctrine was inapplicable, or that Sky Station knew or should have known of the basis of its claims more than four years before filing suit.[4] In its fourth issue, it asserts that the trial court erred in excluding some of its summary judgment evidence.[5] We first consider Sky Station's third issue, which challenges whether appellees proved their entitlement to dismissal on grounds of limitations.

For a claim to accrue, thus beginning the running of limitations, it is not necessary that the plaintiff know all of the essential facts giving rise to the claim. *In re Jorden*, 249 S.W.3d 416, 422 (Tex. 2008) (orig. proceeding). "Instead, a cause of action accrues for limitations purposes when a claimant learns of an injury, even if the rest of the essential facts are unknown." *Id.* A defendant seeking summary judgment on grounds of limitations must conclusively establish its limitations defense, including proving when the asserted causes of action accrued. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999).

---

[4] In reviewing a trial court's granting of summary judgment, we take as true all evidence favorable to the non-movant, indulging reasonable inferences and resolving doubts in his favor. *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). When the trial court grants a traditional motion for summary judgment, as here, we ask whether the movant showed that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Id.*

[5] We review a trial court's rulings concerning the admission of summary judgment evidence for an abuse of discretion. *Fairfield Fin. Grp., Inc. v. Synnott*, 300 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.); *see Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016) ("Evidentiary rulings are committed to the trial court's sound discretion.").

The discovery rule, which applies to cases "where the nature of the injury incurred is inherently undiscoverable and the injury itself is objectively verifiable," *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996), delays the accrual of a claim until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury, *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). For the discovery rule to apply, "[i]t is not enough that the particular injury complained of is not discovered; rather, the question is whether the injury is of the type that is generally discoverable by the exercise of due diligence." *AT&T Corp. v. Rylander*, 2 S.W.3d 546, 556 (Tex. App.—Austin 1999, pet. denied). If the plaintiff asserts the discovery rule, the defendant must negate it "by either conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it." *Pasko*, 544 S.W.3d at 834; *see KPMG Peat Marwick*, 988 S.W.2d at 749.

"The doctrine of fraudulent concealment is an equitable doctrine that provides an affirmative defense to the plea in bar of limitations." *AT&T Corp.*, 2 S.W.3d at 557 (cleaned up). The elements of the doctrine are: (1) the defendant's actual knowledge that a wrong has occurred, and (2) its intent to conceal the facts necessary for the plaintiff to know it has a claim. *Id*. "Passive silence is enough to sustain a fraudulent concealment defense only if there is a duty of disclosure." *Id*. A plaintiff asserting fraudulent concealment as a defense against limitations-based summary judgment has the burden of producing evidence that raises a genuine issue of material fact as to each element that would support his assertion. *KPMG Peat Marwick*, 988 S.W.2d at 749; *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994).

Although the two doctrines have a similar effect, fraudulent concealment concerns whether and for how long limitations are tolled, while the discovery rule determines

7

when the cause of action accrues. *Gibson v. Ellis*, 58 S.W.3d 818, 824 (Tex. App.—Dallas 2001, no pet.). "Irrespective of the potential effect of fraudulent concealment or the discovery rule on limitations, actual knowledge of alleged injury-causing conduct starts the clock on the limitations period" and "triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011). Although reasonable diligence is generally a fact issue, in some circumstances, courts can determine as a matter of law that reasonable diligence would have uncovered the alleged wrong. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58 (Tex. 2015).

Sky Station did not produce more than a scintilla of evidence to show Fidelity had actual knowledge that a wrong had occurred or an intent to conceal the facts necessary for Sky Station to know it had a claim. *See AT&T Corp.*, 2 S.W.3d at 557. Sky Station argued (1) that the closing statement and disbursement statement "establish[ed] the false representation" and "by themselves are sufficient evidence of Fidelity's actual knowledge"; (2) that Fidelity's "self-serving, conclusory denials of actual knowledge are legally invalid"; and (3) that Fidelity's intent and knowledge were fact questions that "must be proven by circumstantial evidence." From those facts, it concluded, "A jury could reasonably infer Fidelity had actual knowledge solely from Fidelity's own documents and choose to disbelieve [Fidelity's] self-serving denials. Accordingly, a no-evidence summary judgment on fraudulent concealment is improper." However, such argument does not raise a fact issue as to Fidelity's actual knowledge that a wrong had occurred or its intentional concealment of the wrong. *See KPMG Peat Marwick*, 988 S.W.2d at 749-50 (party asserting fraudulent concealment must raise it in response to summary judgment motion and provide evidence raising fact issue on each element of defense; "A mere

8

pleading does not satisfy either burden."); *see also Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 436 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (in suit asserting fraudulent concealment of shareholder derivative claims, plaintiff did not proffer evidence raising fact issue and merely pointed to "conclusory statement" in affidavit; *Casey v. Methodist Hosp.*, 907 S.W.2d 898, 903-04 (Tex. App.—Houston [1st Dist.] 1995, no writ) (although hospital did not timely provide plaintiff's medical records, plaintiff did not establish hospital's actual knowledge of wrong or intent to conceal wrong). Sky Station therefore did not satisfy its burden of proof as to fraudulent concealment.[6] *See AT&T Corp.*, 2 S.W.3d at 557; *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 55 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Mahler bore the burden to present proof raising an issue of fact on fraudulent concealment; the burden was not on DMAC to negate fraudulent concealment in its motion for summary judgment.").

Furthermore, the summary judgment evidence established that Sky Station, whose predecessor knew of appellees' involvement in the closing, learned in 2008 of likely fraud related to the transaction. In June 2008, Sky Station was served with the Krots' Motion for Relief From Stay, filed in Waterfall's bankruptcy proceeding, which referenced their lawsuit against Waterfall, Zaretsky, Borokovich, and J&T. In that lawsuit, the Krots alleged numerous instances of fraud, including that J&T was "a company organized by Zaretsky's attorney" and

---

[6] Sky Station points to caselaw stating that "a fiduciary's misconduct [is] inherently undiscoverable" because the plaintiff who is owed the fiduciary duty "is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). However, "this situation does not necessarily last forever. It changes with circumstances." *Farias v. Laredo Nat'l Bank*, 985 S.W.2d 465, 472 (Tex. App.—San Antonio 1997, pet. denied). Instead, "when the fact of misconduct is evident, diligent inquiry is required." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 231 (Tex. 2015); *see S.V.*, 933 S.W.3d at 8. Thus, the mere fact that Fidelity was in a fiduciary relationship with Interim in the closing transaction does not alone satisfy Sky Station's burden.

9

that it fraudulently conveyed the property to Waterfall, "a newly formed limited partnership created by" Zaretsky and Borokovich. Sky Station filed its own motion for relief in the bankruptcy court, stating that it had learned about the Krots' lis pendens and the associated lawsuit and acknowledging the Krots' claims of fraud related to the 200-acre tract of land.

Further, in July 2008, Sky Station received Coleman's report, in which he stated his opinion that the sale was not an "arms-length sale" and observed that J&T had bought a larger tract that included the subject property for about $11,500,000 only three months before the sale of the smaller 200-acre tract to Waterfall for $17,600,000. Coleman determined that, as of July 2008, the 200-acre tract was worth about $8,000,000. Also in July 2008, Sky Station received Borokovich's emergency motion to dismiss Waterfall's bankruptcy proceeding, which asserted a "trifecta of fraud" on Zaretsky's part that included misrepresenting to Sky Station's predecessor that the property sale was an arm's length transaction. Borokovich stated that Waterfall and J&T are two of "five entities, currently or formerly commonly owned and controlled" and that Waterfall was formed "for the ostensible purpose of buying 200 acres of land from J&T for $17,600,000 . . ., which J&T had purchased only three months earlier as part of a 367 acre parcel, the total of which was $11,700,000." He alleged that it was not actually a sale and instead the property was transferred to Zaretsky and Borokovich, who then "contribut[ed]" the property to Waterfall, "which they would co-own and co-manage." Finally, he stated that about $9,000,000 from that sale was "missing."

In 2008, Sky Station may not have known all of the details of Fidelity's and Serebro's involvement and alleged misconduct, but it knew of its likely injury—that its predecessor had been the victim of fraud in the real estate transaction. At that time, Sky Station

10

was put on notice of probable malfeasance in the transaction on the parts of at least J&T, Waterfall, Waterfall's partners, and Waterfall's attorney.

Importantly, despite the indications of fraud and misconduct related to the sale of the property, Sky Station did not attempt to obtain Fidelity's file until May 2012. Sky Station states that "there is no basis to believe Fidelity would have voluntarily provided it to Sky Station; particularly, because Fidelity filed a motion to dismiss and for protection to avoid producing the file." However, as noted earlier, in the hearing on the rule 202 motion, Fidelity's attorney stated that although he did not believe a deposition of a Fidelity representative was appropriate under the rule, Fidelity was willing to provide the closing file under a protective order. Thus, having been informed of fraud and missing funds related to the transaction, the record indicates that Sky Station could have discovered Fidelity's or Serebro's alleged involvement in the misconduct had it looked into the transaction in 2008. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 231 (Tex. 2015) (more than two years before filing suit, heirs were informed of "half-million-dollar discrepancy" between administrator's report of assets and estate's actual assets; court held that fraudulent concealment did not toll limitations beyond that date because that information "gives rise to a duty to make further inquiry"; although tax return obtained later "may have been helpful, a reasonably prudent person would have inquired about the grave disparity between the amount of assets distributed in the probate proceedings and the funds reported to have been in existence at the time of Bernard's death"); *Krot v. Fidelity Nat'l Title Co.*, No. 03-14-00250-CV, 2014 WL 7464084, at *5 (Tex. App.—Austin Dec. 31, 2014, no pet.) (mem. op.) ("Fidelity's identity and role in closing the land transaction was also known to Appellants, and if Appellants did not know initially that Fidelity had handled escrow funds related to the transactions or the alleged source of those funds, those circumstances could have been discovered with the exercise

11

of reasonable diligence.").[7] Appellees therefore defeated Sky Station's attempted defenses to limitations by establishing as a matter of law that Sky Station's responsibility to use reasonable diligence to investigate its possible claims related to the loan transaction arose no later than July 2008, more than four years before it filed suit. *See Hooks*, 457 S.W.3d at 58; *Krot*, 2014 WL 7464084, at *4-5. We overrule Sky Station's third issue.[8]

In its fourth issue, Sky Station argues that the trial court erred in striking certain of its summary judgment evidence. However, "[r]eversing a summary judgment based on an evidentiary error requires appellant to show that there was indeed an evidentiary error and that the error probably resulted in an improper judgment." *Cantu v. Texas Workforce Comm'n*, 145 S.W.3d 236, 245 (Tex. App.—Austin 2004, no pet.). In other words, in addition to showing an abuse of discretion in the trial court's exclusion of evidence, the complaining party "must also show that the trial court's error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment." *Sand v. Brooks*, No. 03-11-00235-CV, 2012 WL 3239151, at *2 (Tex. App.—Austin Aug. 9, 2012, no pet.) (mem. op.); *see* Tex. R. App. P. 44.1(a)(1).

---

[7] *See also Tucker v. Bedgood*, No. 13-16-00433-CV, 2016 WL 7011584, at *5 (Tex. App.—Corpus Christi Dec. 1, 2016, no pet.), *disapproved of on other grounds by Agar Corp. v. Electro Circuits Int'l, LLC*, __S.W.3d__, No. 17-0630, 2019 WL 1495211 (Tex. Apr. 5, 2019) (despite dispute over land sale in 2008, plaintiff "did not investigate his past dealings with Bedgood so as to discover any problems related to the 2006 Bryan transaction. Tucker did not investigate Bedgood's compliance with their oral agreement even though Tucker was then alleging that Bedgood had dishonored other agreements relating to the La Salle Hotel project."); *Farias*, 985 S.W.2d at 473 (in suit filed in December 1990 alleging injury due to "insider's deal" in land sale, "as in the majority of lawsuits, not every detail of LNB's actions was known until the discovery ended. But all the essential facts were known in October 1986," when plaintiff was told there was "something fishy" about transaction).

[8] Because we have held that Sky Station's duty to investigate arose more than four years before it filed suit, we will assume without deciding that the discovery rule and the fraudulent-concealment doctrine were applicable. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011).

This burden requires Sky Station to show that the judgment turns on the evidence that was excluded. *See Cantu*, 145 S.W.3d at 245 (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995)). However, Sky Station only asserts error in the court's evidentiary rulings—it does not attempt to make the required showing of harm and presents no argument explaining how the excluded evidence led to an improper judgment. It therefore has not carried its burden of presenting reversible error related to the evidentiary rulings.[9] *See id*. We overrule Sky Station's fourth issue on appeal.

## CONCLUSION

Having overruled Sky Station's appellate arguments, we sustain the trial court's granting of summary judgment in favor of Fidelity and Serebro.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed: August 13, 2019

_____

[9] Indeed, in its reply to Serebro's brief, Sky Station says:

> [I]t is not clear that these improperly sustained objections matter. Sky Station believes that the trial court's summary judgment rulings were incorrect regardless of whether the trial court's evidentiary rulings to the second summary judgment are sustained by this Court because Serebro did not meet its summary judgment burden and Sky Station had substantial additional evidence. However, if this Court believes the excluded evidence is integral to the propriety of the summary judgment ruling in favor of Serebro, then the Court should reverse these rulings because they were abuses of discretion.

13