# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00199-CV

**Valentine Cantu, Maria Padilla, Carolyn Chatham, Suzanne Hoog-Watson
and George Denton, Appellants**

**v.**

**Texas Workforce Commission and Employees Retirement
System of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. GN001454, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In a suit alleging age discrimination under the Texas Commission on Human Rights Act, the district court granted summary judgment in favor of the Texas Workforce Commission and the Employees Retirement System, dismissing all discrimination claims and declaring that the Retirement System did not violate former government code section 814.1041(b). *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1048, § 13, 1997 Tex. Gen. Laws 3986, 3989 (formerly codified as Tex. Gov't Code Ann. § 814.1041), *repealed by* Act of June 1, 2003, 78th Leg., R.S., ch. 1111, § 46(5), 2003 Tex. Gen. Laws 3178, 3188. Valentine Cantu, Maria Padilla, Carolyn Chatham, Suzanne Hoog-Watson, and George Denton appeal the summary judgment, claiming that age was a motivating factor in both the Workforce Commission's decision to terminate their employment and

the Retirement System's implementation of an early retirement program that denied potential benefits to some of them. Appellants also claim that summary judgment was improper because fact issues exist regarding the proper interpretation of former government code section 814.1041(b) and whether the administrative charges filed by Maria Padilla and Carolyn Chatham served as a catalyst for the Retirement System's revised construction of the section. Finally, appellants assert that the improper exclusion of evidence precludes summary judgment. We affirm the summary judgment because (1) appellants did not establish a *prima facie* case of age discrimination, (2) the plain language and legislative history of section 814.1041(b) support the Retirement System's construction, and (3) the trial court did not abuse its discretion by denying the request for attorney's fees or excluding evidence.

## BACKGROUND

In 1995, the 74th Texas Legislature enacted House Bill 1863 which, among other things, called for the privatization of certain Workforce Commission programs by consolidating the programs and placing them under the control of local workforce development boards. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 11.03, secs. 302.021 & 302.023, 1995 Tex. Gen. Laws 3543, 3590. The Workforce Commission was charged with implementing the privatization plan. Valentine Cantu, Maria Padilla, Carolyn Chatham, Suzanne Hoog-Watson, and George Denton were all employees of the Workforce Commission and worked in a program that was set for elimination. In early 1998, the targeted programs were eliminated and all their employees were terminated.

In response to the privatization plan, the legislature passed Senate Bill 1102 to create retirement incentives for public employees terminated by the plan. *See* Act of May 28, 1997, 75th

2

Leg., R.S., ch. 1048, § 13, 1997 Tex. Gen. Laws 3986, 3989 (formerly codified as Tex. Gov't Code Ann. § 814.1041), *repealed by* Act of June 1, 2003, 78th Leg., R.S., ch. 1111, § 46(5), 2003 Tex. Gen. Laws 3178, 3188 (hereinafter cited as Former Gov't Code § 814.1041). Sections of the government code were amended to provide an affected employee a three-year bonus to be added to both the employee's age and service period if doing so would make that employee eligible for retirement. The retirement annuity of an employee made eligible for retirement as a result of the bonus would be computed from the employee's accrued service period increased by three years. The Retirement System initially interpreted the amendments to grant a qualifying employee only as much of the service-period bonus as necessary to become eligible for retirement. However, in March 1999, former Attorney General John Cornyn opined that the Retirement System's interpretation was incorrect and that qualifying employees should receive the entire three-year credit, even if less was needed to make the employee eligible for retirement. *See* Op. Tex. Att'y Gen. No. JC-0027 (1999). The Attorney General endorsed the Retirement System's interpretation that employees who were already eligible for retirement would receive no bonus.

Appellants filed this suit in an effort to remedy the alleged discrimination and clarify the meaning of former government code section 814.1041. *See id.* The district court granted summary judgment in favor of the Workforce Commission and the Retirement System, dismissing the age discrimination claims, declaring that the Retirement System did not violate former government code section 814.1041(b), and denying appellants' request for attorney's fees under the Uniform Declaratory Judgments Act. Appellants bring this appeal.

3

**DISCUSSION**

*Age discrimination claims*

In their first issue appellants allege that, because age played a motivating role in the terminations and the refusal to grant the bonus to certain employees, both the Workforce Commission and the Retirement System committed age discrimination under the Texas Commission on Human Rights Act. *See* Tex. Lab. Code Ann. § 21.051 (West 1996), § 21.125(a) (West Supp. 2004). We first address the issue of age discrimination as it relates to the terminations.

The Workforce Commission contends that there is no evidence that Valentine Cantu or any of his fellow employees were terminated because of their age and that the district court properly granted the no-evidence summary judgment on the issue of age discrimination. In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to an essential element of each claim on which the nonmovant would have the burden of proof at trial. *See Holmstrom*, 26 S.W.3d at 530; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. A no-evidence summary judgment is essentially a directed verdict granted

4

before trial, to which we apply a legal-sufficiency standard of review. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). Thus, appellants must present evidence that raises a genuine issue of material fact in response to the Workforce Commission's claim that no evidence exists to demonstrate age discrimination.

Appellants' claim is that the reduction in force was a pretext for the underlying motive of eliminating higher-paid older workers. Appellants have offered only circumstantial evidence to prove their claim. In Texas, "[d]iscrimination can be shown indirectly through circumstantial evidence by following the 'pretext' method of proof." *City of Austin Police Dep't v. Brown*, 96 S.W.3d 588, 596 (Tex. App.—Austin 2002, pet. dism'd); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) (outlining order and allocation of proof to be followed in pretext case); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001). The pretext method of proof first requires that the complainant establish a *prima facie* case of discrimination. *City of Austin Police Dep't*, 96 S.W.3d at 596. A *prima facie* case of age discrimination is demonstrated if the complainant was (1) within the protected age group, (2) adversely affected or suffered an adverse employment action, and that (3) similarly situated non-protected class members were not treated similarly.[1] *Id.* If a *prima facie* case is established, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

---

[1] In its brief the Workforce Commission asserted that a *prima facie* case of age discrimination is established if a complainant shows that he (1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which he or she was discharged, and (4) was replaced by someone younger. *See Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Although the elements outlined in *Russo* are not substantially different from those of *City of Austin Police Dep't v. Brown*, 96 S.W.3d 588, 596 (Tex. App.—Austin 2002, no pet.), we will follow the precedent of this Court.

5

*McDonnell-Douglas*, 411 U.S. at 802. Once the employer articulates a nondiscriminatory reason for the termination or rejection, then the burden shifts back to the complainant to demonstrate that the employer's stated reason was a pretext for discrimination. *Id.*

Although the appellants can show that they were within a protected age group and that they suffered an adverse employment action, they cannot demonstrate that similarly situated non-protected class members were treated more favorably. All of the employees of the targeted programs, young or old, were terminated in conjunction with the Workforce Commission's implementation of the privatization plan. With respect to the Retirement System, appellants cannot demonstrate that they suffered an adverse employment action because they were not employed by the Retirement System. *See* Tex. Lab. Code Ann. § 21.051 (stating that an "*employer* commits an unlawful employment practice . . . .") (emphasis added). We conclude that appellants have failed to produce more than a scintilla of evidence to rebut the Workforce Commission's claim that no evidence exists as to the third element establishing a *prima facie* case of age discrimination.[2] Because appellants have failed to establish a *prima facie* case of age discrimination against either the Workforce Commission or the Retirement System, it is unnecessary for us to reach the second and third steps of the pretext analysis.

---

[2] The Workforce Commission actually claimed that no evidence exists to demonstrate that any of the complainants were replaced by someone younger—the fourth element of a *prima facie* case of age discrimination established in *Russo*. *Russo*, 93 S.W.3d at 435. We find that the third element of a *prima facie* case of age discrimination outlined in *City of Austin Police Dep't* is substantially similar to the fourth element in *Russo*. *Compare id. with City of Austin Police Dep't*, 96 S.W.3d at 596. In either case, appellants failed to rebut the Workforce Commission's claim that no evidence exists with regard to an essential element of their claim of age discrimination.

Nevertheless, appellants assert that, if age was at all a motivating factor for decisions made by the Workforce Commission or the Retirement System, then an unlawful employment practice has been established. *See id.* § 21.125(a) (if age is motivating factor for employment practice, even if other factors also motivated practice, then unlawful employment practice has been established). Appellants argue that a report entitled "Texas Performance Review," in which former Comptroller John Sharp recommends that the state should adopt an early retirement incentive plan, is evidence that age was a motivating factor in the decision made by the Workforce Commission and the Retirement System. Although the record is unclear as to exactly when Sharp's report was published, it is evident that it was after the 74th Legislature decided in 1995 to privatize certain Workforce Commission programs.[3] In addition, Sharp's comments were directed to the state as an employer and not to individual state agencies, such as the Workforce Commission. Thus, Sharp's comments could not have influenced any of the Workforce Commission's decisions. Appellants have failed to show that age played a factor in any of the decisions made by the Workforce Commission.

Additionally, appellants assert that the actions of the Workforce Commission and the Retirement System disparately impacted older employees. Disparate impact claims arise from "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (quoting *International Bhd. of Teamsters v. United*

---

[3] This conclusion is based on the fact that the most recent citation in Sharp's report was from September 1996, and because the report's footnotes reference other bills passed by the 74th Legislature.

*States*, 431 U.S. 324, 335-36 n.15 (1977)).  We apply the judicial interpretation of the Age Discrimination in Employment Act of 1967 (ADEA) when determining the availability of and burden of proof applicable to a disparate impact case based on age discrimination.  Tex. Lab. Code Ann. § 21.122(b) (West 1996).  The Fifth Circuit has recently held that, "a disparate impact theory of liability is not cognizable under the ADEA," and this Court has followed that precedent.  *Smith v. City of Jackson, Mississippi*, No. 02-60850, 2003 U.S. App. LEXIS 23125 at *34, ___ F.3d ___(5th Cir. Nov. 13, 2003); *see Texas Parks & Wildlife Dep't v. Dearing*, ___ S.W.3d ___, ___, No. 03-03-00131-CV, slip op. at 21 (Tex. App.—Austin Jan. 8, 2004, no pet. h.).  Although some non-age factors may be "so related to age that they are mere proxies," *id.* at *6, here the reduction in force was caused by the privatization of entire programs that affected all employees of whatever age.  Therefore, appellants have asserted no colorable disparate-impact claim.  Additionally, the Retirement System could not have engaged in an unlawful employment practice as to these employees because it was not their employer.  *See* Tex. Lab. Code Ann. § 21.051 (West 1996).

Similarly, neither the Workforce Commission nor the Retirement System committed age discrimination under the Texas Commission on Human Rights Act by granting some employees the extra retirement benefits authorized by former government code section 814.1041(b).[4]  *See*

---

[4] Under the section an employee, displaced by the reduction in force, could receive an additional three years added to the employee's retirement service annuity if that employee was made eligible for retirement by adding three years to both age and service period.  The Retirement System construed the section to mean that an employee who was already eligible to retire prior to the reduction in force would not be granted the three-year-service-credit bonus.  For a more complete discussion of this issue see our discussion of the catalyst theory, *infra*.

Former Gov't Code 814.1041(b). Section 21.102(a)(1) of the Texas Commission on Human Rights Act states,

> (a)  . . . [A]n employer does not commit an unlawful employment practice by applying different standards of compensation or different terms, conditions, or privileges of employment under:
>
> (1) a bona fide seniority system, merit system, or an employee benefit plan, such as a retirement, pension, or insurance plan, that is not a subterfuge to evade this chapter[.]

Tex. Lab. Code Ann. § 21.102 (West 1996). The Workforce Commission laid off everyone employed in the affected programs as mandated by the legislature. Its actions were not a subterfuge designed to evade the Human Rights Act. Furthermore, appellants have offered no evidence that demonstrates a subterfuge perpetrated by the Workforce Commission. Therefore, the Workforce Commission did not commit an unlawful employment practice by complying with the Retirement System's interpretation of former government code section 814.1041(b). Again, the Retirement System could not have committed age discrimination under the Texas Commission on Human Rights Act because it did not employ the affected employees. *See id.* § 21.051. We therefore overrule appellants' first issue.

### *Former government code section 814.1041(b)*

Appellants' second issue alleges that the district court erred when it refused to declare that the Retirement System had violated the express terms of former government code section 814.1041(b). *See* Former Gov't Code 814.1041(b). Appellants argue that the Retirement System violated the section by interpreting it to mean that terminated employees who were already eligible

9

to retire under the "Rule of 80"[5] in government code section 814.104 could not receive additional benefits under section 814.1041(b). *See id.*; Tex. Gov't Code Ann. § 814.104(a)(2) (West Supp. 2004). The district court disagreed with appellants and granted summary judgment in favor of the Retirement System on this issue.

Summary judgment is available when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Thus, summary judgments are subject to *de novo* review. *Vanliner Ins. Co. v. Texas Workers' Comp. Comm'n*, 999 S.W.2d 575, 577 (Tex. App.—Austin 1999, no pet.). Statutory interpretation is also a question of law subject to *de novo* review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *In re Canales*, 52 S.W.3d 698, 701 (Tex. 2001). Our primary goal is to ascertain and effectuate the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999). In doing so we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999).

At the time of this dispute, former government code section 814.1041 provided:

(a)     This section applies only to members of the employee class whose positions with the Texas Workforce Commission [other listed agencies omitted] are eliminated as a result of contracts with private service providers or other

---

[5] The so-called "Rule of 80" derives from government code section 814.104, providing that a member is eligible to retire and receive a service retirement annuity if the member "has at least 5 years of service credit in the employee class and the sum of the member's age and amount of service credit in the employee class, including months of age and credit, equals or exceeds the number 80." Tex. Gov't Code Ann. § 814.104 (West Supp. 2004).

10

reductions in services provided by those agencies and who separate from state service at that time.

(b)     A member described by Subsection (a) is eligible to retire and receive a service retirement annuity *if* the member's age and service credit, each increased by three years, *would meet* age and service requirements for service retirement under Section 814.104(a) at the time the member separates from state service as described by Subsection (a). The annuity of a person who retires under this subsection is computed on the person's accrued service credit increased by three years.

*See* Former Gov't Code 814.1041 (emphasis added). It is clear that appellants were affected by the privatization plan and were part of a class of employees who were potentially eligible to receive the credits. Thus, they would meet the criteria outlined in section 814.1041(a). However, section 814.1041(b) outlines a second condition that must be met to receive the service-credit bonus. It plainly states that an employee "is eligible to receive a service retirement annuity *if* the member's age and service credit each increased by three years, *would meet* age and service requirements . . . under Section 814.104(a)." *Id*. (emphasis added); *see* Tex. Gov't Code Ann. § 814.104(a). The phrase "would meet" indicates that section 814.1041(b) was intended to provide an alternative means of measuring retirement eligibility for those employees affected by the privatization plan who had *not* already met the age service requirements under the Rule of 80. Furthermore, the use of the conditional "if" and "would" limits the applicability of the section to those employees who would not otherwise meet the traditional retirement eligibility requirements outlined in government code section 814.104(a). An employee who is already eligible to retire has met those requirements. Therefore, only an employee who was not already eligible to retire would benefit from the additional three years added to the employee's age and service credits.

When construing a statute, we may also consider legislative history as part of our efforts to ascertain and effectuate the intent of the legislature. Tex. Gov't. Code Ann. § 311.023(3) (West 1998). The fiscal note that accompanied Senate Bill 1102—the legislation that originally contained former government code section 814.1041—states, "Among the changes that will have an actuarial impact are . . . *earlier retirement eligibility* for certain employees of the Texas Workforce Commission." Fiscal Note, Tex. S.B. 1102, 75th Leg., R.S. (1997) (emphasis added). In addition, the bill analysis on Senate Bill 1102 describes the contested provision as follows:

> [It] adds a new section 814.1041 to provide service retirement option for employees of Texas Workforce Commission . . . whose positions are eliminated as a result of privatization. Two options are provided. One allows members whose positions are eliminated to retire upon separation if adding 3 years of age and 3 years of service credit makes them eligible for retirement. . . .

House Comm. on Pensions & Invs., Bill Analysis, Comm. Substitute Tex. S.B. 1102, 75th Leg., R.S. (1997) (discussion of second option omitted because it is contained in former section 814.1041(c), which is not in dispute). Both the fiscal note and the bill analysis imply that section 814.1041(b) is designed to provide early retirement for employees affected by privatization who were not yet eligible to retire. The fiscal note does so explicitly. The bill analysis does so inferentially by using the word "makes" when describing the retirement option provided by the section. A person who is already eligible for retirement cannot be *made* eligible, when he *already is* eligible. Early retirement is not meaningful for employees who are already eligible to retire at will. Therefore, the Retirement System's interpretation of the section is in accord with the legislative intent as expressed in the legislative history of the statute.

12

Because both the plain language of the statute and its legislative history support the Retirement System's interpretation, we overrule appellants' second issue.

***Catalyst theory***

In their third issue, appellants argue that, because their case served as the catalyst that led to the revision of the Retirement System's interpretation of former government code section 814.1041(b), the district court erred by refusing to grant declaratory relief in the form of attorney's fees. Initially, the Retirement System construed former government code section 814.1041(b) to mean that, if an employee became eligible for retirement because of the three-year bonus added to each age and service credits, that employee received only as much of the service-credit bonus for retirement-annuity purposes as was necessary to meet the Rule of 80. Attorney General Cornyn then issued an opinion that an employee eligible for the bonus must receive the entire three-year service credit, regardless of whether the employee needed all three service-credit years to meet the Rule of 80. *See* Op. Tex. Att'y Gen. No. JC-0027 (1999). In response, the Retirement System recalculated the retirement annuities of all employees who did not receive the full service credit and paid them the balance due with interest. Appellants allege that the discrimination charges filed with the Texas Commission on Human Rights by Chatham and Padilla served as a catalyst for the Attorney General's opinion and the Retirement System's subsequent recalculations. Therefore, appellants assert that appellants should receive attorney's fees under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997) (stating that a court may award attorney's fees as are equitable and just).

13

We review a court's decision to award attorney's fees under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A court abuses its discretion when it rules arbitrarily and unreasonably, without regard to guiding legal principles, or without supporting evidence. *Id*. The Texas Uniform Declaratory Judgments Act does not require that a party prevail in order to receive an award of attorney's fees. *See Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 512-13 (Tex. App.—Austin 1993, writ denied) (if legally sufficient evidence supports finding that appellee's lawsuit was catalyst for change in policy, then attorney's fees may be awarded despite fact that appellees were not deemed prevailing party). Nor does the act require that a prevailing party receive attorney's fees. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-38 (Tex. 1996); *see Lopez*, 863 S.W.2d at 513 (trial court is given broad discretion to award attorney's fees under act). However, there is not legally sufficient evidence to support appellants' theory that Chatham's and Padilla's discrimination claims served as a catalyst for the Attorney General's favorable opinion. First, and most importantly, no evidence has been produced that demonstrates that the Attorney General was aware of their discrimination charges. Second, although the record indicates that Chatham did file a claim with the Texas Commission on Human Rights, she did so ten months after Cornyn issued his opinion. Furthermore, there is no evidence in the record that Padilla ever filed a claim with the Texas Commission on Human Rights. Finally, although the Attorney General did agree that employees who received any bonus should receive the entire bonus, he ruled against appellants' fundamental position that every affected employee must receive the bonus retirement credits. Therefore, because of the dearth of supporting evidence for

14

appellants' theory, and because of the discretion vested in the trial court, we overrule appellants' third issue.

### *Exclusion of evidence*

Appellants' final issue asserts that the district court erred by sustaining the Workforce Commission's and Retirement System's objections to certain summary-judgment evidence and in excluding the evidence. We assume that appellants are arguing that, because the evidence was excluded, the summary judgment was improper. Admission or exclusion of evidence is within the discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). Reversing a summary judgment based on an evidentiary error requires appellant to show that there was indeed an evidentiary error and that the error probably resulted in an improper judgment. *Id.*; *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 257 (Tex. App.—Houston [1st Dist.] 1991, writ denied). To successfully challenge an evidentiary ruling, the complaining party must show that the judgment turns on the particular piece of evidence that was excluded or admitted. *Alvarado*, 897 S.W.2d at 753-54. We determine whether a party has met this burden by reviewing the entire record. *Id.* at 754.

Thus, it is appellants' burden to indicate to which issue each particular piece of excluded evidence pertains and whether the judgment on that issue turned on the excluded evidence. Here, there were multiple issues in the suit, several plaintiffs, and two defendants. However, appellants only assert that evidentiary errors exist. They make no attempt to connect any individual piece of excluded evidence to any particular issue or to argue that the judgment of the trial court turned on the excluded evidence. Therefore, without deciding whether evidentiary error exists, we

15

hold that appellants have failed to carry his burden necessary for us to find reversible error in the trial court's evidentiary rulings. Appellants' fourth issue is overruled.

## CONCLUSION

We hold that neither the Workforce Commission nor the Retirement System committed age discrimination with regard to the terminations stemming from the reduction in force and the implementation of an age and service credit that permitted some of the terminated employees to become eligible for retirement. We further hold that the Retirement System did not misinterpret former government code section 814.1041(b). Finally, we hold that neither the trial court's denial of attorney's fees nor the exclusion of evidence was an abuse of discretion. We thus affirm the summary judgment dismissing the claims against the Workforce Commission and the Retirement System in all respects.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   January 8, 2004

16