# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00225-CV

**Dr. Byron D. Brent, Appellant**

**v.**

**Benny Daneshjou; Daneshjou Resources, Inc.;
and Daneshjou Daran, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN204227, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dr. Byron Brent appeals a take-nothing summary judgment rendered in favor of Benny Daneshjou, Daneshjou Resources, Inc., and Daneshjou Daran, Inc. (collectively, "Daneshjou").[1] After Brent discovered extensive mold and water damage to his house, he sued Daneshjou on various theories related to Daneshjou's 1990 construction of the house and subsequent attempts to repair it in 1993 and 1995. Daneshjou moved for summary judgment, urging that Brent's claims were time-barred and lacked merit. The district court granted summary judgment without stating the grounds for its decision. On appeal, Brent asserts that the district court erred in granting

---

[1] For convenience, we will refer to Daneshjou and the companies as a single entity unless otherwise specified.

summary judgment because the evidence raises issues of material fact with respect to his claims against Daneshjou. We will affirm the trial court's judgment.

## BACKGROUND

In 1990, Daneshjou finished construction on the house for persons not party to this suit. After buying the house from a relocation service in 1992, Brent noticed water leaks around windows in various areas of the three-level house. The leaks were especially prevalent on the east wall of the middle floor and in the general area of the northeast corner of the property. Brent contacted Daneshjou for assistance in repairing the house because Daneshjou built the house. Brent averred that, after inspecting the property, Daneshjou diagnosed the cause of the leaks as a badly constructed window ledge and "arranged for all the construction repairs himself" by finding contractors to repair the walls and fix the leaks. The repair efforts were completed in January 1993. Brent stated that he did not see any mold in the house during the repairs.

In 1995, Brent noticed water leaks in the roof and in the stairway leading from the middle level to the third floor of the house. He also noticed a recurrence of the leaks in the northeast part of the house. Brent again called Daneshjou and asked him to remedy the problems. Brent said that Daneshjou diagnosed the leaks as a combination of drain problems, a defective roof, and recurring problems from the areas repaired in 1993. Workers unplugged clogged drainage pipes and patched some cracks in the stucco. Daneshjou told Brent that these repairs should stop the leaks; Brent was not billed for any of this work. Brent had a new roof put on the house on Daneshjou's recommendation, but Daneshjou was not involved in that project.

These repairs did not end Brent's problems with his house. In the fall of 1998, he noticed a leak in the window that had previously been repaired, but he did not contact Daneshjou. In December 2001, Brent began a mold remediation of a lower-level bathroom using a different contractor. The demolition expanded and eventually revealed extensive mold damage throughout this and other walls of his home, the absence of a slab foundation under the stairs, and the fact that wood from the stairs was touching ground alleged to be repeatedly and extensively wet. Todd Morgan, who watched the demolition, stated by affidavit that some of the supporting columns in the house were blackened by mold, others disintegrated, and others appeared to have partially liquefied. Brent averred that, when contacted, Daneshjou told him that a foundation was not placed under the stairs to save cost in the construction of the home. Brent asked Daneshjou for suggestions on repairing and correcting the stairwell to prevent the penetration by water; although Daneshjou said he would think about ways to repair the problem, he never got back to Brent.

Brent sued Daneshjou on November 22, 2002. He complained that the original construction of the house was defective and that the repairs completed by Daneshjou were insufficient to prevent the water infiltration and mold infestation in the house. Brent alleged that he could not have known and did not know until 2001 that defects in the original construction and inadequate repairs could cause or were causing mold damage.

Daneshjou filed a traditional summary-judgment motion, raising the affirmative defenses of statutes of limitations and repose, and a no-evidence summary-judgment motion regarding the various causes of action. Without specifying the grounds for its decision, the district court granted summary judgment in favor of Daneshjou.

3

**DISCUSSION**

Because the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm summary judgment if any of the grounds in the summary-judgment motion are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We will examine whether evidence supports a traditional summary judgment on the grounds Daneshjou raised before examining the grounds for his no-evidence motion for summary judgment.

**Traditional motion**

In a traditional summary-judgment motion, the moving party has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed issue of material fact, evidence favorable to the nonmovant must be taken as true and every doubt must be resolved in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548-49. A defendant must conclusively negate at least one essential element of a plaintiff's cause of action or conclusively prove every element of a defense in order to be entitled to summary judgment. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

In his traditional summary-judgment motion, Daneshjou raised the affirmative defenses of the statutes of repose and limitations, asserting that these bar all of Brent's claims. Daneshjou asserts that ten-year statutes of repose bar all claims arising from the original construction of the house. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.008, .009 (West 2002). He also asserts that a two-year statute of limitations bars claims for Deceptive Trade Practices Act ("DTPA")

4

violations and negligence, and that a four-year statute of limitations bars claims for breach of warranty, breach of contract, and fraud.[2] *See* Tex. Bus. & Com. Code Ann. § 17.565 (West 2002) (DTPA); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2002) (negligence); *id*. § 16.004(a).

A statute of repose begins running upon a particular event, such as the substantial completion of an improvement, rather than when a cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.008(a), .009(a); *Tumminello v. U.S. Home Corp.*, 801 S.W.2d 186, 187-88 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Statutes of limitations and repose are related, but differ in some aspects of their implementation. A statute of limitations is a procedural device operating as a defense to limit the remedy available from an existing cause of action; a statute of repose creates a substantive right to be free from liability after a legislatively determined period. *See Cadle Co. v. Wilson*, 136 S.W.3d 345, 350 (Tex. App.—Austin 2004, no pet.). While statutes of limitations operate to bar enforcement of a right, a statute of repose takes away the right altogether. *Id*. The discovery rule does not toll a statute of repose. *Dallas Mkt. Ctr. Dev. Co. v. Beran & Shelmire*, 824 S.W.2d 218, 221 (Tex. App.—Dallas 1991, writ denied). A statute of repose can cut off a right of action before an injured party discovers or reasonably should have discovered the defect or injury. *Id.*; *see also Johnson v. City of Fort Worth*, 774 S.W.2d 653, 654 n.1 (Tex. 1989). There are some limited exceptions. Section 16.009 expressly does not bar an action:

---

[2] Brent has two other claims that do not have separate statutes of limitation. The Residential Construction Liability Act does not create a cause of action or derivative liability or extend a limitations period. Tex. Prop. Code Ann. § 27.005 (West 2004). His claim against Daneshjou for malicious conduct is derivative of the primary causes of action.

(1) on a written warranty, guaranty, or other contract that expressly provides for a longer effective period;

(2) against a person in actual possession or control of the real property at the time that the damage, injury, or death occurs; or

(3) based on wilful misconduct or fraudulent concealment in connection with the performance of the construction or repair.

Tex. Civ. Prac. & Rem. Code Ann. § 16.009(e).

Statutes of limitation begin running when a cause of action accrues—when the injury occurs—unless there is some basis for tolling. *See Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998). Brent urges two bases of tolling—discovery and fraudulent concealment. The discovery rule abates the inception of the period of limitations in the rare case that the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable; the tolling persists until the plaintiff discovers, or through the exercise of due diligence should have discovered, the nature of his injury. *Id*. at 36-37. The Texas Supreme Court has held that

> the discovery rule does not linger until a claimant learns of actual causes and possible cures. Instead it tolls limitations only until a claimant learns of a wrongful injury. Thereafter, the limitations clock is running, even if the claimant does not yet know:
>
> - the specific cause of the injury;
> - the party responsible for it;
> - the full extent of it; or
> - the chances of avoiding it.

*PPG Indus., Inc., v. JMB/Houston Ctrs. Partners Ltd. P'ship*., 146 S.W.3d 79, 93-94 (Tex. 2004) (citations omitted). The fraudulent concealment doctrine suspends the running of a statute of limitations when a defendant has actual knowledge of a wrong that he has a duty to disclose, but acts

with a fixed purpose to conceal the wrong. *Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 493 (Tex. App.—San Antonio 2003, pet. denied). Fraudulent concealment estops a defendant from asserting limitations as an affirmative defense. *Id*. (citing *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)). The fraudulent-concealment doctrine tolls the running of the statute until the fraud is discovered or could have been discovered with reasonable diligence. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997). Knowledge of facts that would make a reasonable person inquire and discover a concealed cause of action is equivalent to knowledge of the cause action for limitations purposes. *Booker*, 103 S.W.3d at 493.

Absent tolling, all of Brent's claims are barred by limitations or repose. The latest action by Daneshjou of which Brent complains occurred in 1995.[3] As set out above, the longest applicable statute of limitations is four years. Thus, absent tolling, all limitations periods expired by 1999 and the ten-year statute of repose applicable to the original construction expired in 2000—both well before Brent filed suit against Daneshjou in November 2002. We must examine whether tolling prevented the inception or suspended the running of the limitations or repose on claims relating to Daneshjou's actions in 1990, 1993, and 1995.

*1990 construction*

Daneshjou urges that the statutes of repose and limitations bar Brent's causes of action arising from the original construction of the house. Brent contends that genuine issues of fact

---

[3] Daneshjou's failure to respond in 2001 with theories on useful repairs is not actionable.

exist concerning whether deficiencies in construction were sufficiently apparent to notify Brent of those deficiencies.

The statute of repose provides that a claimant must bring suit "not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement." Tex. Civ. Prac. & Rem. Code Ann. § 16.009(a). The house was undisputedly completed in 1990. A claimant can extend the period by submitting, within the ten-year period, a written claim to the potential defendant; the claimant then may file suit within two years from submitting the claim. *Id*. § 16.009(c). Brent's first written claim was undisputedly filed in 2001, outside the ten-year window.

Brent urges that fact questions exist regarding whether Daneshjou engaged in willful misconduct or fraudulent concealment of construction deficiencies. A nonmovant seeking to avoid the effect of a statute of limitations established by summary-judgment proof must produce evidence to raise a fact question on its counter-affirmative defense. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). To show that he is entitled to the estoppel effect of fraudulent concealment, Brent must show that the defendant had (1) actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong. *See Booker*, 103 S.W.3d at 493. We find three cases particularly instructive on the interplay of repose and limitations, willful misconduct and fraudulent concealment, and the summary-judgment standard. *See Ryland*, 924 S.W.2d at 122; *Booker*, 103 S.W.3d at 493; *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 744 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

8

In *Bayou Bend*, the Fourteenth Court affirmed a summary judgment granted on facts and claims strikingly similar to those in this case. 866 S.W.2d at 744. In that case, the co-owners of leaky condominiums sued the builder and subcontractors for negligence, breach of warranties, and violation of the DTPA in the construction of the condominiums. *Id.* at 741-42. The condos were substantially complete in 1981; leaks were apparent as early as 1982. *Id.* at 743. In 1983, the co-owners retained experts to detect the source of the leaks and also attempted repairs; when those repairs failed, they hired more experts to investigate and attempted more repairs, but the building continued to leak. *Id.* at 743-44. In March 1987, the co-owners decided against hiring an engineer as recommended by a consulting firm. *Id.* at 744. The court held that the co-owners' knowledge of the leaks and cracks in precast concrete panels beginning in 1982, and certainly no later than 1987, negated tolling based on either the discovery rule or any fraudulent concealment. *Id.* at 747. The court held that "[k]nowledge of facts, conditions, or circumstances which would cause a reasonable person to make inquiry leading to the discovery of the concealed cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes." *Id.* The court also held that the co-owners failed to show that the defendants had any duty to disclose wrongs or that they acted with a fixed purpose to conceal those wrongs. *Id.* The suit, filed in 1991, was time barred. *Id.*

In *Booker*, evidence of an intent to conceal wrongs caused the San Antonio court to reverse a traditional summary judgment based on limitations. 103 S.W.3d at 493. The court wrote:

> Real Homes visited the Booker home several times during 1997, 1998, and 1999, in an attempt to diagnose and repair the problems in the house. The evidence also shows that employees or representatives of Real Homes actually completed repair work on the house, assuring the Bookers that the leaks, water damage, and mold infestation were remedied. In addition, the Bookers' affidavits indicate that,

9

following the repairs, Real Homes told them the continuing musty smell was coming from outside the house and then failed to respond to several attempts by the Bookers to communicate. Finally, there is summary judgment evidence demonstrating that the Marvin Windows repairman, who reported the situation as "bad," was told by Real Homes to complete work on only two sides of the house, repairing only 26 windows and leaving the remaining two sides as they were. Real Homes then represented that the problems had been fixed and requested the Bookers to endorse a check from Marvin, paying for Real Homes' portion of the repairs.

*Id*. at 493-94. The court affirmed the summary judgment in favor of Marvin, however, concluding that there was no evidence either that Marvin had a duty to disclose anything to the Bookers or that Marvin had a fixed purpose to conceal the disrepair of the windows. *Id*. at 494.

The supreme court in *Ryland* reinstated the trial court's summary judgment, reversing the appellate court's ruling that the plaintiff had demonstrated an issue of fact concerning fraudulent concealment or willful misconduct by the defendant builder. 924 S.W.2d at 122. The plaintiffs sued after they were injured by the collapse of a wooden deck on a house that defendant built fifteen years earlier. They alleged negligence in the use of untreated lumber for the "runner board" of the deck, which then rotted and collapsed. *Id*. at 121. To avoid application of the ten-year statute of repose, the plaintiffs submitted the affidavit of a construction expert who opined that the use of untreated lumber when treated lumber "is specified" in the plans constituted willful misconduct. *Id*. at 122. He also opined, "It is my understanding that neither the builder nor the subsequent deck renovator notified the inspectors, appraisers, owners, tenants, or any other party with an interest in the home of the use of the untreated wood. This failure to notify amounts to a concealment of a known violation of the specifications and industry practice." *Id*. Although the court of appeals found this sufficient to create a fact issue, the supreme court held that the affidavit offered no evidence that the

10

builder knew that untreated lumber was used, and therefore was no evidence of willful misconduct in the use of the wood.[4]  *Id*.  The supreme court further determined that the affiant's "understanding" that the builder did not notify anyone about the use of untreated wood was not evidence that the builder did not notify anyone.  *Id*.  The supreme court further dismissed as conclusory the assertion in the affidavit that Ryland's failure to notify anyone about the use of untreated lumber was concealment of a known violation of specifications and building standards.  *Id*.  The court held that this conclusory assertion was no evidence of willful misconduct.  *Id*.

Brent contends that Daneshjou's faulty construction of the house and subsequent repairs demonstrate both willful misconduct and fraudulent concealment that tolled the running of the statute of repose until the summer of 2001 when investigation and repair work revealed construction deficiencies.  There is evidence that Daneshjou deliberately built the house with no slab under the stairs to save money, apparently with wood touching the ground in some places.  The faulty stairwell was behind a concrete wall.  Even when he saw work occurring in the basement aimed at discovering the source of the leaks, Daneshjou never disclosed this potential source of problems.  The roof drainage system's leaks were behind stucco walls, and the stucco walls trapped the water out of sight.  Brent also produced evidence that the walls were constructed inadequately to support a three-story house.  Brent contends he had no way of knowing about these deficiencies until 2001, when he learned of the extensive mold infestation throughout his home.  Brent contends

---

[4] The court of appeals had already concluded that the lack of evidence that the builder knew that untreated lumber was used meant that there was no evidence that the builder fraudulently concealed that fact.  *Hood v. Ryland Group, Inc*., 911 S.W.2d 931, 935 (Tex. App.—Beaumont 1995), *rev'd, Ryland Group, Inc. v. Hood*, 924 S.W.2d 120 (Tex. 1996).

that Daneshjou, as a professional builder and the builder of this house, had a duty to disclose these hidden wrongs but remained silent, intending to conceal them because disclosure would cost him money to repair them.

Similarities to *Ryland Homes* and *Bayou Bend* lead us to conclude that the record in this case does not contain the evidence necessary to show a fact issue regarding willful misconduct or fraudulent concealment of flaws in the original construction. Construing the evidence most favorably to Brent, the record shows that Daneshjou built the house in ways that made it susceptible to admitting and retaining water, leading to rot and mold. But there is no evidence of improper intent. Evidence shows that Daneshjou cut corners to save money, but it does not show that he did so knowing that those measures rendered the house deficient or dangerous or risked doing so. Nor is there evidence that, in building or repairing the house, he acted with the intent to conceal these wrongs. As in *Booker*, there is evidence that Daneshjou represented that the problems were fixed. *See Booker*, 103 S.W.3d at 494 (builder represented that leaks were repaired and that musty smell came from outside). But, unlike in *Booker*, there is no evidence here of intentional malfeasance and misinformation; in *Booker*, the builder told another contractor not to finish the repairs, but represented to the plaintiffs that the repairs were complete and accepted a payment for all the repairs—including work not performed. *See id*. There is no evidence that Daneshjou committed willful misconduct while building the house, nor is there evidence that he guided construction and repairs intending to conceal any misconstruction or intentionally misled Brent through information or misinformation intending to conceal any misconstruction. In short, there is no evidence of willful misconduct or fraudulent concealment of errors in the original construction that creating a fact

12

question regarding tolling. *See Ryland*, 924 S.W.2d at 121. Accordingly, we conclude that the district court did not err by granting Daneshjou's motion for summary judgment that Brent's complaints about the construction of the house were barred by the ten-year statute of repose.

*1993 repairs*

Brent also asserts claims arising from failed repairs made by Daneshjou in 1993. Brent averred that these repairs surrounded a leaking second-level window. A ledge was removed and replaced, the entire interior east wall was removed and replaced, and stucco on the exterior was repaired and repainted. Although the statute of repose does not prohibit suit on claims arising from these repairs, the limitations periods ran on such claims, absent tolling.

The summary-judgment burden regarding the different types of tolling differ. As with the statute of repose, Brent had the burden to produce evidence showing at least a fact issue regarding tolling of the statute of limitations from fraudulent concealment. *See American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994). However, Daneshjou had the initial summary-judgment burden to conclusively negate the discovery rule. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000). If Daneshjou carried that burden, Brent had to introduce contrary evidence in order to survive summary judgment. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

Brent's own affidavit conclusively defeats either form of tolling with respect to the 1993 repairs of the window. Brent stated that he called Daneshjou in 1995 because "I had leaks in the same locations that leaked earlier." This repeat leak put him on notice that the 1993 repairs had not cured the problem. As discussed above, we find no evidence of willful misconduct or fraudulent

13

concealment regarding any deficiencies in these repairs. Even if Daneshjou's alleged representations that the 1993 repairs solved the problem could be construed as willful or fraudulent, the recurrence of the leak in 1995 put Brent on notice that the 1993 repairs did not solve the problem, ending any claim of tolling. *See PPG Indus.*, 146 S.W.3d at 93-94. The four-year statute of limitation thus expired in 1999, four years after the 1995 leak and three years before Brent filed suit.

### 1995 repairs

The 1995 problems and repairs were more extensive. The 1993 leak recurred, and a second leak occurred in the stairway. Brent averred that Daneshjou theorized that the second leak was caused by a clogged pipe in the wall intended to drain the roof. According to Brent's affidavit, Daneshjou sent some workers who unplugged a drain that had been clogged with rocks and debris and others who fixed stucco cracks which may have been causing some of the leaks. Brent replaced the roof at Daneshjou's suggestion but not with his workers. Brent averred that Daneshjou told him that these repairs should solve the problems. Absent tolling, the four-year statute of limitations for the 1995 repairs ran in 1999.

Daneshjou contends that the evidence conclusively negates application of the discovery rule to any deficiencies in these repairs. He asserts that 1998 recurrence of the window leak put Brent on notice to investigate whether the 1995 repairs were faulty.

The tolling effect of the discovery rule ends when the plaintiff discovers its injury, even if the plaintiff is not yet aware of the full extent of its injury or of the causes of that injury. *Bayou Bend*, 866 S.W.2d at 744. Several cases illustrate this principle. In *PPG*, the court held that the replacement of 3000 windows—twenty-five percent of the windows on the building—due to the

14

failure of their reflective coating put the plaintiff on notice to investigate the possibility of a design defect in the windows. *PPG*, 146 S.W.3d at 94. Recurring leaks put owners on notice to investigate the causes. *See Bayou Bend*, 866 S.W.2d at 743. Similarly, in *Tenowich v. Sterling Plumbing Co.*, tolling ended on the date purchasers first discovered multiple leaks in pipes and were alerted to the fact that there was a serious problem throughout the house, even though they did not discover the full extent of the damage until almost a month later when a claims adjuster examined the pipes. 712 S.W.2d 188, 189-90 (Tex. App.—Houston [14th Dist.] 1986, no writ).

Application of this principle to the 1995 repairs shows that suit is barred. As discussed above, the statute of repose bars any claim concerning leaks in drain pipes caused by nail punctures during the original construction. Although Brent alleges that Daneshjou's employees unclogged a drain pipe in 1995, he does not allege that as a source of problems; his drain pipe-related claim concerns punctures by nails in the original construction of the house and is barred by the ten-year statute of repose. The recurrence of the window leak in the "fall of 1998" ended any tolling from the discovery rule regarding the window leak. Any two-year statute of limitations expired before Brent filed suit in November 2002.

But Daneshjou has not demonstrated in his traditional motion for summary judgment the absence of fact issues regarding the discovery rule on other claims. Daneshjou has not shown conclusively that any problems arising from the 1995 stucco repairs should have been discovered before 2001 when Brent found mold in the walls of his house. There also remains a fact question regarding whether any four-year limitations periods expired regarding the 1995 window repair; the

15

discovery of a leak in the "fall of 1998" is not conclusive evidence that Brent discovered it before November 1998.

The record thus supports summary judgment on traditional grounds against all claims except for those relating to the 1995 stucco repairs, which were not shown conclusively to be discoverable more than two years before suit was filed, and those claims arising from the 1995 window repairs, which were not shown conclusively to be discoverable more than four years before suit was filed, to which a four-year statute of limitation applies.

**The no-evidence motion**

Concluding that the record does not support a traditional summary judgment on claims based on the 1995 window and stucco repairs does not end our inquiry.[5] We must next determine whether the record supports granting Daneshjou's no-evidence motion for summary judgment on these claims.

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i); *Cantu v. Texas Workforce Comm'n*, 145 S.W.3d 236, 239 (Tex. App.—Austin 2004, no

---

[5] As discussed above, Brent's complaints about damages arising from the roof repairs fail because there is no evidence that Daneshjou or his agents replaced the roof. The only evidence is that he recommended that the roof be replaced and that Brent hired the workers who did the work.

16

pet.). A no-evidence summary judgment is essentially a directed verdict granted before trial to which we apply a legal-sufficiency standard of review. *Id*. at 240. A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810, (Tex. 2005); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences, unless there is no favorable evidence or contrary evidence renders supporting evidence incompetent or conclusively establishes the opposite. *Chapman,* 118 S.W.3d at 751; *see also City of Keller*, 168 S.W.3d at 807. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Chapman*, 118 S.W.3d at 751. When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A defendant who moves for summary judgment need only negate one element of the plaintiff's cause of action. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

Daneshjou asserted that Brent produced no evidence of these elements of breach of contract: the existence of a contract, Brent's performance or tender of performance, breach by Daneshjou, and resulting harm to Brent. *See New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.). Daneshjou asserted that there was no contract because there was

17

no consideration, which is an essential element of a contract. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003). Mutual, reciprocal promises binding on both parties may constitute consideration for a contract, but promises with optional performance are not consideration. *Id*. It is undisputed that Brent did not pay Daneshjou for the 1995 repairs. Brent argues on appeal that Daneshjou received the benefit of protection of his professional reputation and the abeyance of a lawsuit. But there is no evidence that Brent promised or was bound to provide these intangible benefits to Daneshjou. There thus is no evidence of consideration or a contract, and there can be no breach of a non-existent contract.

Daneshjou asserted that Brent failed to produce evidence of the four elements of breach of warranty under the DTPA: consumer status, existence of a warranty, breach of the warranty, and proximate cause of damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2002). Brent provided no evidence that he was a consumer for purposes of the DTPA with respect to the 1995 repairs. Under the DTPA, a consumer is an individual, partnership, or corporation who seeks or acquires, by purchase or lease, any goods or services. *Id*. § 17.45(4); *see Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). To qualify as a consumer, a plaintiff must prove that (1) it sought or acquired the goods or services by purchase or lease, and (2) the goods or services form the basis of the complaint. *Cameron*, 618 S.W.2d at 539. If either requirement is lacking, the person aggrieved by a deceptive act or practice must rely on the common law or some other statutory provision for redress. *Id*. There is no evidence that Brent sought or acquired the 1995 repairs by purchase or lease. The only evidence is that he did not pay. Accordingly, he is not a consumer under the DTPA with respect to the 1995 repairs and cannot seek recovery under its provisions.

18

Daneshjou asserts that Brent produced no evidence of any of the elements of fraud. A plaintiff alleging fraud must prove that the defendant made a material representation that was false, knowing or with reckless disregard to whether it was false, intending that the recipient rely on the representation; the recipient must act in reliance on the statement to his detriment. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). At trial and on appeal Brent focuses on representations and silence regarding the stairwell and drain-pipe[6] design and construction; as discussed above, such claims are barred by the statute of repose.

Daneshjou asserts that Brent produced no evidence of the essential elements of the remaining causes of action, which include negligence with respect to the stucco repairs and breaches of implied and express warranties with respect to both the stucco repairs and the 1995 window repairs.[7] Common to these remaining causes of action is the element of proximate cause.[8] Daneshjou had workers repair the stucco in 1995. Although Brent opined in his affidavit that the

---

[6] In his appellate brief, Brent mentions drain repairs as a source of fraud, but does not discuss evidence of fraud regarding them. He asserts that Daneshjou's workers unplugged drainpipes in 1995, but there is no pleading or evidence of how this damaged the house.

[7] As discussed above, the window leak recurred in 1998, ending any tolling based on the discovery rule. A negligence claim based on that leak is barred by the two-year statute of limitations applicable to negligence claims. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (West 2002).

[8] The elements of breach of an express warranty are an express affirmation of fact or promise by the seller relating to the goods that is part of the basis of the bargain on which the plaintiff relied, goods that fail to comply with the affirmations of fact or promise, and injuries proximately caused by that failure. *Great Am. Prods. v. Permabond Int'l*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, pet. denied). Breach of an implied warranty of workmanship also requires that the breach of that implied warranty proximately cause the plaintiff's damages. *Cocke v. White*, 697 S.W.2d 739, 743 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Negligence can be found if a duty to use reasonable care arises when a person undertakes to provide services to another, either gratuitously or for compensation, and a breach of that duty proximately causes damage. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 836-37 (Tex. 2000).

stucco "application" prevented water from escaping from the wall and caused the mold and rot, there is no evidence that the 1995 repairs caused that problem. Other evidence regarding stucco assails the vapor barrier used in the original construction as the cause of the mold; it does not show that the 1995 repair of cracks in the stucco changed the drainage or aeration of the walls so that water could no longer drain out. There is no evidence concerning the warranty issues relating to the window repairs; it is telling that, when mustering the evidence supporting his breach of warranty claims in his appellate reply brief, Brent focuses on evidence of the design of the roof and eaves, the construction of the stairway, and the resultant penetration of moisture into the house—not the 1995 repairs. There is thus no evidence in this record that a breach of an express or implied warranty related to either the stucco or the window repairs in 1995 or that any negligence in the 1995 stucco repairs proximately caused any damage to Brent or his house.

Because we have concluded that no causes of action survive the motion for summary judgment, we need not address whether Benny Daneshjou is individually liable on any of the causes of action.

## CONCLUSION

We affirm the summary judgment.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:  November 4, 2005

20